Docket Nos. 101902, 102227 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

SAMOUR, INC., *et al.*, Appellees, v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO, Appellant.– MASHNI CORPORATION *et al.*, Appellants, v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed January 19, 2007.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke took no part in the decision.

## OPINION

In separate complaints, the two sets of plaintiffs in these consolidated appeals, Mashni Corporation *et al.* (Mashni) and Samour, Inc., *et al.* (Samour), challenged the validity of a local option election held under the Liquor Control Act of 1934 (Act) (235 ILCS 5/9–1 *et seq*. (West 2002)), based on alleged errors in the form of the ballots. The complaints both alleged that the Chinese version of the ballots failed to comply substantially with the statutory form in section 9–6 of the Act (235 ILCS 5/9–6 (West 2002)). The circuit court of

Cook County invalidated the election because it found that a transposition error in the precinct and ward numbers violated the substantial compliance requirement of the Act.

In separate appeals, the appellate court in *Mashni* reversed the trial court judgment (362 Ill. App. 3d 730), while the appellate court in *Samour* affirmed (362 Ill. App. 3d 12). This court consolidated the two appeals. We conclude that the ballots complied substantially with section 9–6 of the Act and, therefore, the circuit court erred in invalidating the election. Accordingly, we affirm the judgment in *Mashni*, No. 102227, reversing the trial court's decision, and reverse the judgments in *Samour*, No. 101902.

## I. BACKGROUND

On February 25, 2003, a local option election was held in the 45th Precinct of the 15th Ward and the 32nd Precinct of the 48th Ward in Chicago. The Board of Election Commissioners for the City of Chicago (Board) submitted propositions to the voters of those precincts asking whether the sale at retail of alcoholic liquor should be prohibited within their precincts. The ballots in each precinct were printed in English, Spanish, and Chinese.

The ballots listed the ward and precinct numbers in the upper left corner. A section entitled "Description of Area to be Affected," containing a common description of the precincts using street boundaries, landmarks, and addresses, was printed after the ward and precinct numbers. In the 45th Precinct of the 15th Ward, the English version of the proposition stated, "Shall the sale at retail of alcoholic liquor be prohibited in this 45th Precinct of the 15th Ward of the City of Chicago (as such precinct existed as of the last General Election[)]?" The proposition in the 32nd Precinct of the 48th Ward stated, "Shall the sale at retail of alcoholic liquor be prohibited in this 32nd Precinct of the 48th Ward of the City of Chicago (as such precinct existed as of the last General Election)?"

Following the election, the plaintiffs in these cases filed separate complaints against the Board contesting the validity of the local option election in their respective precincts. In *Samour*, plaintiff Samour, Inc., alleged it is an Illinois corporation holding retail liquor licenses and conducting business within the 45th Precinct of the 15th Ward in

Chicago. In *Mashni*, the plaintiffs included Mashni Corporation and S & T, Inc., Illinois corporations holding retail liquor licenses and conducting business within the 32nd Precinct of the 48th Ward. In both cases, there were also a number of individual plaintiffs who were identified as registered voters residing within the respective precincts. Barbara Stanley and Paul Uhl intervened in the *Mashni* trial proceedings but not in the *Samour* proceedings.

The plaintiffs' complaints were virtually identical with respect to the claims at issue here, and they were consolidated for purposes of the trial court proceedings. The plaintiffs alleged that the election was invalid because the Chinese translation of the proposition did not comply with the ballot form required by section 9–6 of the Act. In pertinent part, the plaintiffs alleged that: (1) the English ballots asked voters whether the sale of alcohol should be prohibited *at retail* as required by the Act, while the Chinese translation asked whether the sale of alcohol should be prohibited generally; and (2) the precinct and ward numbers were transposed on the Chinese ballots, thus incorrectly identifying the affected areas as the 15th Precinct of the 45th Ward and the 48th Precinct of the 32nd Ward.

At the bench trial, two expert witnesses testified, one for the plaintiffs and one for the Board and the intervenors. None of the plaintiffs testified and the parties did not present any other witnesses. Hanlelore Mui, a freelance interpreter and translator of the Chinese language, testified on behalf of the plaintiffs. During her testimony, Mui referred to a ballot from the 32nd Precinct of the 48th Ward, but the parties stipulated that her testimony was also applicable to the ballot used in the 45th Precinct of the 15th Ward. Mui testified that the Chinese translation asked whether "the sale of liquor in general should it be prohibited \*\*\* in the 48th Precinct of 32nd District in Chicago City." In her opinion, the Chinese translation had "omissions of important meaningful words" and was not a correct translation. Mui testified that the transposition of the ward and precinct numbers on the Chinese ballots "could be easily confusing" because people who could not read the description of the area affected would probably think they were given the wrong ballot. She acknowledged, however, that voters could "easily solve that problem" if they read the description of the area affected.

Mui also testified that the Chinese translation was not accurate

because it used the word "sale" without the term "retail." The translation should have included the character "ling shou," the term for "retail sale" or "for sale at retail." She believed that the Chinese translation printed on the ballot encompassed all types of sales, including wholesale, resale, or for personal consumption.

On cross-examination, Mui acknowledged that the common description of the precinct would be easy for Chinese readers to understand. She also explained that "retail" can have multiple meanings referring to price, quantity, and the sales location. The term "sale" could also have multiple meanings. According to Mui, the general public is familiar with the character ling shou because it is a commonly used term. She conceded that "sale at retail" could be translated using "xiao shou" as it appeared on the ballots, but maintained that a more accurate translation would have used the character ling shou to indicate the difference between retail sale and wholesale.

Dr. Richard Gu, a professor of Chinese language at Northwestern University, testified on behalf of the Board and the intervenors. Gu stated there was always a choice of characters to use in translating and it was preferable to use plain or simplified Chinese with the general public. Xiao shou, the character used by the Board, was the best translation for "sale at retail" because that character is generally taught and understood to mean retail sales. In Gu's opinion, voters would understand that the ballot was referring to retail sales.

According to Gu, adding ling shou would not clarify the ballot because xiao shou meant sale. He asserted the "meaning is clearly there already. No one would misunderstand it." In fact, fewer people would be able to understand the proposition if ling shou, the character for "retail," was added to the translation. Gu explained that the Chinese language has over 40,000 characters and only the most commonly used characters are generally taught. The general public is, therefore, unfamiliar with less commonly used characters. Xiao shou is much more commonly used and taught than ling shou. Gu did not even teach ling shou to his college and graduate students. Although xiao shou could be understood to include both retail and wholesale, the general public would understand it to mean retail sale. In Gu's opinion, xiao shou was the best character to convey the idea of retail sale to the general public.

Dr. Gu further stated that Chinese voters would not be confused by the transposition of the precinct and ward numbers because it is a "very, very common error" in translating between English and Chinese. Chinese speakers always put the larger number before the smaller one and are always cautious when viewing numbers in a translation. Thus, Chinese voters would identify this common problem and would rely on the narrative description of the area affected rather than the precinct and ward numbers on the ballots.

Based on Dr. Gu's testimony, the trial court found that the Chinese translation using the character xiao shou complied substantially with the statutory form set forth in section 9–6 of the Act. The court concluded that Chinese voters "were given a clear and meaningful choice to vote for or against the proposition." As for the transposition of the precinct and ward numbers, the court stated that the question was whether the error "put a Chinese-speaking person in a different position *** than it does an English-speaking and a Spanish-speaking person." The court concluded that the Chinese translation failed to comply substantially with section 9–6 of the Act "based upon the error in the ballot and the transposition of the ward and precinct and the fact that a Chinese-speaking person is put in a different position based upon the ballot that was submitted, than the English and Spanish-speaking people." The trial court, therefore, held that the election was invalid.

Separate appeals were filed in these cases. In *Samour, Inc. v. Board of Election Commissioners*, the Second Division of the First District held that the trial court did not clearly err in finding that the Chinese ballot did not comply substantially with the Act due to the transposition of the precinct and ward numbers. 362 Ill. App. 3d at 16-19. The appellate court invalidated the election on that basis, making it unnecessary to consider whether omission of the ling shou character also voided the election. 362 Ill. App. 3d at 19. Thus, the appellate court affirmed the decision of the trial court. 362 Ill. App. 3d at 19.

In *Mashni Corp. v. Board of Election Commissioners*, the First Division of the First District held that the trial court erred in invalidating the election based on the transposition of the precinct and ward numbers. 362 Ill. App. 3d at 739-43. According to the appellate court, the common description of the precinct would be more useful

to voters in clarifying any confusion on the area affected than the precinct and ward numbers. 362 Ill. App. 3d at 743. While acknowledging a contrary result was reached on this issue in *Samour*, the appellate court held that the ballot as a whole, including the common description of the area affected, complied substantially with section 9–6 because it portrayed the chief features of the proposition and the area affected in words of plain meaning. 362 Ill. App. 3d at 743. The appellate court further held that the trial court did not err in determining that the Chinese translation of "at retail" complied substantially with the statutory form in section 9–6. 362 Ill. App. 3d at 744. Accordingly, the appellate court reversed the trial court's judgment invalidating the election. 362 Ill. App. 3d at 743.

We allowed petitions for leave to appeal filed by the parties in both *Samour* and *Mashni*. 210 Ill. 2d R. 315(a). The appeals were consolidated for review.

## II. ANALYSIS

In these consolidated appeals, we must decide whether the Chinese translation on the ballots submitted in the 45th Precinct of the 15th Ward and the 32nd Precinct of the 48th Ward complied substantially with the statutory form provided in section 9–6 of the Act. The plaintiffs renew their claims that the translation failed to comply substantially with section 9–6 because: (1) the precinct and ward numbers were transposed, thus incorrectly identifying the areas affected by the propositions; and (2) the Chinese translation asked whether the sale of alcohol should be prohibited generally rather than "at retail" as required by section 9–6.

Section 9–6 requires the proposition used in a local election to ban the sale of alcohol to be "in substantially the following form":

> "Shall the sale at retail of alcoholic liquor (or alcoholic liquor other than beer containing not more than 4% of alcohol by weight) (or alcoholic liquor containing more than 4% alcohol by weight in the original package and not for consumption on the premises) be prohibited in (or at) ..........?"
> 235 ILCS 5/9–6 (West 2002).

The proper name of the precinct is to be inserted in the blank. 235 ILCS 5/9–1 (West 2002). The ballot must also contain a common

description of the precinct in plain language unless the election official determines that the description will not fit on the ballot. 235 ILCS 5/9–6 (West 2002). If the common description is not included on the ballot, large printed copies of the description must be displayed prominently in the precinct polling location. 235 ILCS 5/9–6 (West 2002).

When a special statute dictates the form of a ballot, the ballot used in the election must comply substantially with the statutory mandate or the election is void. *Smith v. Calhoun Community Unit School District No. 40*, 16 Ill. 2d 328, 332 (1959). In determining whether a ballot is in substantial compliance with a statutory form, we must ask whether voters were given as clear an alternative as if the statutory form had been identically followed. *Dick v. Roberts*, 8 Ill. 2d 215, 221 (1956). To render an election void, a deviation from the statutory form must be in a matter of substance. *People ex rel. Davis v. Chicago, Burlington & Quincy R.R. Co.*, 48 Ill. 2d 176, 182 (1971). In construing the term "substantial," this court has stated:

> " 'The word "substantial," as ordinarily used, means essential, material or fundamental. A substantial copy of the form of the ballot designated in the statute must evidently be one that contains the essence of the form in the statute–one giving the correct idea but not necessarily the exact expressions in the statutory form. The words of the statute, "The ballots at said election shall be substantially in the following form," necessarily convey the idea that the ballot to be used or voted by the voters is not required to be an accurate or exact copy but one which embodies or contains the substance or main features of the ballot found in the statute. The legislature evidently did not intend that every word of the statutory form should be found in the form furnished the voter, and if enough of the words found in the statutory form, coupled with other apt words, are printed on the ballot furnished to the voter that will mean the same thing to all of the voters as the words used in the statutory form, the statute will be substantially complied with.' " *Davis*, 48 Ill. 2d at 183, quoting *People ex rel. Howard v. Chicago & Eastern Illinois R.R. Co.*, 296 Ill. 246, 249-50 (1921).

The substance of a public measure is, therefore, adequately stated

if the ballot contains a fair portrayal of the proposition's chief features in words of plain meaning. *Smith*, 16 Ill. 2d at 335. Moreover, when a deviation from the statute has occurred, this court has refused to elevate form over substance and has instead considered the likelihood that the deviation in wording confused the voters or obstructed them in voting in accordance with their intentions. *Davis*, 48 Ill. 2d at 182. "The focus is on the existence of a meaningful choice for the voters. A ballot is sufficient if the voter has a clear opportunity to express a choice either for or against it." *Krauss v. Board of Election Commissioners*, 287 Ill. App. 3d 981, 984 (1997), citing *Hoogasian v. Regional Transportation Authority*, 58 Ill. 2d 117, 124 (1974).

This court has also recognized that the intent of the statute ultimately controls in determining what constitutes statutory compliance and the effect of noncompliance. *Davis*, 48 Ill. 2d at 182. Here, the Act states that it shall be liberally construed to protect the health, safety, and welfare of the people of Illinois and to promote temperance in the consumption of alcoholic liquor by sound and careful regulation of the manufacture, sale, and distribution of alcoholic liquor. 235 ILCS 5/1–2 (West 2002).

### A. Standard of Review

The first issue we must address is the proper standard of review. In *Samour*, the appellate court applied the "clearly erroneous" standard (362 Ill. App. 3d at 15), while in *Mashni* the court considered whether an election complied substantially with the Act to be a question of law subject to *de novo* review (362 Ill. App. 3d at 739). Before this court, the parties continue to dispute the applicable standard of review.

This court has cited the clearly erroneous standard of review only in cases governed by the Administrative Review Law (735 ILCS 5/3–101 *et seq*. (West 2002)). We have limited the application of that standard to reviewing administrative decisions on mixed questions of fact and law. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002); *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Thus, this court has only applied the

clearly erroneous standard to decisions of administrative agencies. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 153 (2005). In all other civil cases, we review legal issues *de novo* and factual issues under a manifest weight of the evidence standard. See *Corral*, 217 Ill. 2d at 153.

This appeal arises not from an administrative review proceeding, but from an election challenge filed in circuit court. There is no decision of an administrative agency at issue in this appeal. We, therefore, review any factual questions under the manifest weight of the evidence standard, but review *de novo* the legal determination of substantial compliance with the Act. See *Corral*, 217 Ill. 2d at 153. Having clarified the correct standard of review in these consolidated appeals, we proceed to the merits of the parties' substantive arguments.

### B. Transposition

The Board contends that the trial court improperly used a strict compliance test in concluding that the transposition of the precinct and ward numbers put Chinese-speaking voters "in a different position" than other voters. According to the Board, the trial court's decision is inconsistent with our case law requiring only substantial compliance, as well as with the express legislative intent requiring the Act to be liberally construed. The Board maintains the evidence established that the ballots gave Chinese-speaking voters a clear and meaningful choice to vote for or against the proposition. See *Krauss*, 287 Ill. App. 3d at 984, citing *Hoogasian*, 58 Ill. 2d at 124. Thus, the Chinese translation complied substantially with section 9–6, and the trial court erred in invalidating the election based upon the transposition of the precinct and ward numbers.

Similarly, the intervenors argue that the evidence does not support a finding that the ballots failed to comply substantially with section 9–6. The expert witnesses agreed that the common descriptions of the precincts were accurate and easy to understand. Moreover, plaintiffs' expert, Mui, testified that any confusion due to the transposition of the numbers would be easily resolved by reading the common descriptions. Thus, it is clear that the ballots, considered as a whole, were not confusing or misleading. Accordingly, the intervenors assert

that the ballots gave Chinese-speaking voters a clear opportunity to express their choice either for or against the proposition.

Conversely, the plaintiffs contend that the Chinese translation is not in substantial compliance with section 9–6 because the Board mistakenly identified the area affected both at the top of the ballots and in the proposition. The plaintiffs claim that the Chinese translation in the ballots presents a different question than the one required by the statute. The common description does not remedy this defect because there is no guarantee that voters consulted the description or that they were familiar with the boundaries stated in the description. Thus, the plaintiffs maintain the trial court properly found that the error in identifying the affected area resulted in an invalid election.

We note that the trial court did not make specific findings of fact or credibility determinations on the transposition issue. The court simply reviewed the evidence and found that the ballots failed to comply substantially with section 9–6 as a result of the transposition of the precinct and ward numbers. Nonetheless, we will review the factual issues under the manifest weight standard. See *Corral*, 217 Ill. 2d at 153. A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence. *Best v. Best*, No. 101135, slip op. at 6 (September 21, 2006).

A review of the record demonstrates that the experts agreed on the critical factual issues supporting the legal conclusion that the Chinese translation was in substantial compliance with section 9–6. Both Dr. Gu and Mui testified that the precinct and ward numbers were transposed in the Chinese translation on the ballots. Although Mui testified that, read alone, the transposition of the precinct and ward numbers "could be easily confusing," she acknowledged that voters could "easily solve that problem" by reading the common description. Mui further testified that the common description of the precincts would be easy for Chinese readers to understand. In addition, Dr. Gu testified that Chinese-speaking voters would not be confused by the transposition of the numbers because it is a "very, very common error" in translation. Gu testified that voters would identify this common error and would rely on the common description of the area affected rather than the precinct and ward numbers on the ballots.

The plaintiffs' expert, Mui, established several essential facts. First, Chinese-speaking voters could easily resolve any confusion caused by the transposition by reading the common description of the precincts and, second, the common description would be easy for Chinese readers to understand. Reviewed under the manifest weight standard, these facts alone are sufficient to conclude that, taken as a whole, the ballots' description of the affected area did not confuse Chinese-speaking voters or deprive them of a meaningful choice either for or against the proposition. See *Davis*, 48 Ill. 2d at 182; *Krauss*, 287 Ill. App. 3d at 984, citing *Hoogasian*, 58 Ill. 2d at 124.

Nonetheless, the plaintiffs assert there is no guarantee that voters would be familiar with the boundaries stated in the common description. The evidence, however, does not indicate that the precinct and ward numbers would be more likely to inform voters of the area affected than the common description that is required to be communicated "in plain and nonlegal language." 235 ILCS 5/9–6 (West 2002). To the contrary, Dr. Gu testified that voters would rely on the common description rather than the precinct and ward numbers on the ballots. The plaintiffs' own expert testified that Chinese readers could easily understand the common description of the precincts. Moreover, in evaluating substantial compliance, this court has favored "words of plain meaning" over technical or legal language. See *Smith*, 16 Ill. 2d at 335 (stating that the substance of a proposition is adequately set forth if the ballot contains a fair portrayal of the proposition's chief features "in words of plain meaning, so that it can be understood by persons entitled to vote"). It would be contrary to both our established precedent and common sense to conclude that the legal description in the form of precinct and ward numbers is more intelligible to voters than the common description set forth "in plain and nonlegal language." See *Smith*, 16 Ill. 2d at 335.

The plaintiffs also argue that we cannot be sure that voters would actually read the common description. Thus, the plaintiffs apparently contend that Chinese-speaking voters would read the precinct and ward numbers and be confused by them, but would not read other parts of the ballot, including the common description of the precincts.

If we were to accept the plaintiffs' argument, the legislative purpose in requiring a common description would be defeated. The legislature added the common description requirement to section 9–6

with the intent to clarify any voter confusion about the area affected by a proposition. The legislative history shows that the inclusion of a common description was "designed to reduce the confusion" of voters. See 80th Ill. Gen. Assem., House Proceedings, June 15, 1977, at 83 (statements of Representative Capparelli); 80th Ill. Gen. Assem., Senate Proceedings, May 17, 1977, at 180-81 (statements of Senator Kosinski) (same comment). Thus, the legislature intended for voters to rely upon the common description in voting on a proposition submitted under section 9–6.

Additionally, this court has consistently held that all provisions of a statute should be viewed as a whole. *People v. Molnar*, 222 Ill. 2d 495, 519 (2006). Statutes should be construed so that no term is rendered meaningless or superfluous. *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002). If we were to assume that voters would disregard the common description appearing in a ballot, the common description requirement would be read out of section 9–6. We must, therefore, presume that voters will read the entire ballot, including the common description mandated by section 9–6. The common description in the ballots cannot simply be ignored by this court, but must be given the effect intended by the legislature.

In sum, we conclude that the manifest weight of the evidence establishes that the common description contained in the ballots would alleviate any confusion created by the transposed precinct and ward numbers. The transposition of the precinct and ward numbers did not obstruct Chinese-speaking voters from voting in accordance with their intentions or deny them a meaningful choice either for or against the proposition. See *Davis*, 48 Ill. 2d at 182; *Krauss*, 287 Ill. App. 3d at 984, citing *Hoogasian*, 58 Ill. 2d at 124. Thus, as a matter of law, the ballots were in substantial compliance with section 9–6 on the identification of the areas affected by the proposition. We conclude that the trial court erred in invalidating the election based on the transposition of the precinct and ward numbers on the ballots. Accordingly, we reverse the appellate court judgment in *Samour* upholding the trial court's ruling and affirm that portion of the *Mashni* judgment reversing the trial court on this issue.

## C. Translation of "At Retail"

Having concluded that the transposition of the precinct and ward numbers did not violate the Act, we consider whether the use of the Chinese character xiao shou rather than the character ling shou complied substantially with section 9–6. Based on Dr. Gu's testimony and the reasoning in *Krauss*, 287 Ill. App. 3d 981, the trial court found substantial compliance. On appeal, the *Samour* court did not reach this issue because it held that the transposition problem invalidated the referendum. 362 Ill. App. 3d at 19. The appellate court in *Mashni*, however, upheld the trial court's finding, stating that it would not overturn that court's reliance on Dr. Gu's testimony. Relying on Dr. Gu's testimony, the *Mashni* court determined that "the term *xiāo shòu* gave the correct idea to the voters *** even if the term used was not necessarily the exact expression utilized by the statutory form." 362 Ill. App. 3d at 744. The court distinguished *Krauss* and concluded that the trial court "did not err in determining that the 'at retail' translation was in substantial compliance with the Act." 362 Ill. App. 3d at 744.

We again note that different standards of review apply to the factual and legal components of this issue. While the ultimate legal question of whether the use of the character xiao shou was in substantial compliance with the Act is reviewed *de novo*, the underlying factual matters will be reviewed under a manifest weight of the evidence standard. *Corral*, 217 Ill. 2d at 153. As the *Mashni* court correctly recognized, under the manifest weight standard a trial court's credibility decision is subject to great deference in a bench trial. 362 Ill. App. 3d at 744. Indeed, we will not substitute our judgment on credibility matters because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses. *Best*, slip op. at 6. Here, because the relevant testimony of the experts is closely balanced on this issue, we accept the trial court's credibility determination favoring Dr. Gu's testimony.

Dr. Gu testified that it is generally better to use simplified Chinese characters when addressing the general public. Applying that rule, Gu stated that xiao shou is the best translation for "sale at retail" because it is usually taught and understood by the public to mean retail sales. Gu asserted that on seeing that character voters would understand that the ballot was referring to retail sales. He added that there was no

benefit to using the alternative character, ling shou, because the "meaning is clearly there already. No one would misunderstand it." He explained that only the most common of the more than 40,000 Chinese characters are usually taught. The general public would, therefore, more likely be confused by the less familiar character ling shou than by the common character xiao shou. Gu added that while xiao shou could include both retail and wholesale sales, most Chinese speakers would understand that it referred to retail sales, making it the best translation choice.

After reviewing this testimony, we agree with the *Mashni* court that a preference for the use of the character xiao shou is not against the manifest weight of the evidence. Based on Dr. Gu's testimony, we find that while the ballot translation may not have complied strictly with the statutory form, it was in substantial compliance. Unlike *Krauss*, where the Spanish translation completely altered the meaning of the ballot proposition by using the Spanish word for "to owe" instead of the word for "to drink," here the error, if any, is relatively minor. *Krauss*, 287 Ill. App. 3d at 986. Indeed, according to Dr. Gu's testimony, most Chinese-speaking voters would have more readily understood this translation than the one suggested by the plaintiffs.

We conclude that the translation using the character xiao shou conveyed the "sale at retail" requirement of section 9–6 to Chinese-speaking voters in words of plain meaning. The translation did not obstruct voters from voting in accordance with their intentions or deny them a meaningful choice on the proposition. Thus, as a matter of law, the use of the character xiao shou complied substantially with the requirements of the Act.


### III. CONCLUSION

We hold that the appellate court in *Samour* erred by affirming the trial court's decision invalidating the local option election based on the transposition of the precinct and ward numbers in the Chinese version of the ballot. Despite the transposition, the ballot's overall description of the affected area was in substantial compliance with the statutory form in section 9–6 of the Act. In addition, we agree with the appellate court in *Mashni* that the use of the Chinese character xiao shou for the English phrase "sale at retail" complied substantially with

the Act. Accordingly, we reverse the judgments of the appellate and circuit courts in *Samour* and affirm the judgment of the appellate court in *Mashni* reversing the trial court judgment.

> *No. 101902–Judgments reversed;*
> *No. 102227–Appellate court judgment affirmed.*

JUSTICE BURKE took no part in the consideration or decision of this case.