NOTICE

Decision filed 07/08/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230618-U

NO. 5-23-0618

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ROSS E. SHEPARD JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Clay County. |
| | ) | |
| v. | ) | No. 22-MR-5 |
| | ) | |
| JEFF HACKMANN, LISA HACKMANN, | ) | |
| and DARRELL ALLEN, Road Commissioner, | ) | |
| Songer Township, Clay County, Illinois, | ) | Honorable |
| | ) | Joel J.C. Powless, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court correctly entered judgment on the pleadings as to count III. The trial court's judgment in favor of defendants, following a bench trial, was not against the manifest weight of the evidence.

¶ 2    The plaintiff, Ross E. Shepard Jr., appeals the January 10, 2023, January 27, 2023, and May 11, 2023, orders of the circuit court of Clay County. For the reasons that follow, we affirm the trial court's orders.

¶ 3                              I. BACKGROUND

¶ 4    We recite only those facts necessary for an understanding of our disposition of this appeal. On October 18, 2022, the plaintiff filed a verified amended complaint consisting of three counts. Count I was alleged against all three defendants, Jeff Hackmann and Lisa Hackmann (the

1

Hackmanns) and Darrell Allen, as road commissioner for Songer Township (Allen). Count I sought a declaratory judgment finding that a road identified as "Tamarack Road" that passed through property owned by the Hackmanns was a public road by reason of it being used by the public as a highway for 15 years. Count II sought an easement by prescription for the road that passed through the Hackmanns' property and was only alleged against the Hackmanns. Count III sought an easement by implication for the road that passed through the Hackmanns' property and was only alleged against the Hackmanns. The following documents were attached as exhibits to the complaint: (1) Exhibit A—a Geographic Information System (GIS) map for Clay County, Illinois; (2) Exhibit B—a Google Maps image depicting Tamarack Road; (3) Exhibit C—a copy of a warranty deed executed on September 25, 1974; (4) Exhibit D—a copy of a warranty deed executed July 19, 2007; (5) Exhibit E—a copy of a quitclaim deed executed January 18, 2017; and (6) Exhibit F—a copy of a warranty deed executed March 15, 2019.

¶ 5    The Hackmanns filed a verified answer to the amended complaint on October 20, 2022. Allen filed a verified answer to the amended complaint on October 25, 2022.

¶ 6    On November 22, 2022, the Hackmanns filed a motion for judgment on the pleadings as to counts II[1] and III of plaintiff's amended complaint. Count III sought an easement by implication. The allegations of count III of the amended complaint and the corresponding verified answer of the Hackmanns as to count III are as follows:

"1. Plaintiff, Ross E. Shepard, Jr. (hereinafter 'Shepard'), resides at 2125 South Walnut Street, Springfield, Sangamon County, Illinois. Plaintiff, Ross E. Shepard, Jr. owns

---

[1]The judgment on the pleadings granted as to count II is not at issue in this appeal, so it will not be addressed.

2

real estate located at 41 Tamarack Road, Xenia, Clay County, Illinois, identified as parcel no. 09-31-300-023.

ANSWER: Defendants admit the allegations of Paragraph 1.

2. Defendants, Jeff and Lisa Hackmann (hereinafter 'Hackmann') reside at 6107 Briar Trial, Waterloo, Monroe County, Illinois. Defendants, Hackman [*sic*] own property with a site address of Greendale Lake Drive, Xenia, Clay County, Illinois, identified as parcel no. 09-31-300-024.

ANSWER: Defendants admit the allegations of Paragraph 2.

3. There exists a road identified as Tamarack Road which passes through both parcels of property owned by Shepard and the Hackmanns.

ANSWER: Defendants deny the allegations of Paragraph 3.

4. For more than twenty years last past, Shepard has used the road previously identified as Tamarack Road to cross the Hackmann's [*sic*] property in order to access the northwestern portion of the Shepard's property. A GIS Map highlighting this section of Tamarack Road that Shepard has used is attached hereto as Exhibit A.

ANSWER: Defendants deny the allegations of Paragraph 4.

5. On or about October 17, 1974, Judith Kay Franklin was conveyed an undivided one-half interest in certain real estate located in Clay County, Illinois, which is now designated by Parcel Identification Nos. 09-31-300-023 and 09-31-300-024. A copy of the 1974 Warranty Deed is attached hereto as Exhibit C.

ANSWER: Defendants admit the allegations of Paragraph 5.

6. In 2007, Judith Kay Franklin obtained an easement for 'purposes of ingress and egress over, across, and through the lands conveyed herein on an existing roadway for

3

access to the real estate owned by Judith Kay Franklin lying East of lands conveyed herein'. The easement was to last for a period of Judith Kay Franklin's life or until she conveyed or transferred ownership at which time the easement would terminate. See 2007 Warranty Deed attached hereto as Exhibit D.

ANSWER: Defendants admit that in 2007 Plaintiff's predecessor in title, Judith K. Franklin, reserved an easement for ingress and egress as set forth in Amended Complaint Exhibit D. Defendants further admit that said easement, by its express terms, was to terminate when Judith K. Franklin died or until she conveyed or transferred ownership.

7. On or about February 6, 2017, Judith Kay Franklin, as Grantor, conveyed her undivided one-half interest in parcel no. 09-31-300-023 via Quitclaim Deed to Tracy Kay Scroggins, Ross E. Shepard, Jr., and Camie Ananias, as Grantees. A copy of the Quitclaim Deed is attached as Exhibit E.

ANSWER: Defendants admit the allegations of Paragraph 7 and, in further answer, state that said conveyance terminated the easement for ingress and egress over what is referred to as Tamarack Road.

8. In March of 2019, Plaintiff, Ross E. Shepard, Jr., obtained full ownership of the parcel identified as parcel no. 09-31-300-023. See copy of 2019 Warranty Deed attached hereto as Exhibit F.

ANSWER: Defendants admit the allegations of Paragraph 8.

9. As a result of the termination of the easement across Tamarack Road through Hackman's [*sic*] property in 2017, Plaintiff, Shepard lost access to the northwest portion of his land which is otherwise landlocked by lakes.

ANSWER: Defendants deny the allegations of Paragraph 9.

4

10. Because the northwestern portion of Shepard's is otherwise landlocked without access via Tamarack Road through Hackmann's [*sic*] property (parcel no. 91-31-300-024), an easement is necessary to the beneficial enjoyment of Plaintiff Shepard's real estate.

ANSWER: Defendants deny the allegations of Paragraph 10.

11. The Hackmanns have disallowed Shepard access by Tamarack Road through their property to Shepard's real estate.

ANSWER: Defendants admit that they have denied Plaintiff access over their property across what is referenced as Tamarack Road.

12. As such, an easement by necessity is needed.

ANSWER: Defendants deny the allegations of Paragraph 12."

¶ 7 The motion for judgment on the pleadings as to count III argued that the pleadings established that the severance of title occurred in 2007. Further, the Hackmanns argued that the time of the severance of title was a crucial factor to determining an easement by implication.

¶ 8 The plaintiff filed his response to the motion for judgment on the pleadings on January 9, 2023, the same day the matter was set for hearing. In response, the plaintiff argued that the severance of title in 2017 created an implied easement in favor of plaintiff. Further, plaintiff argued that whether he had reasonable means of ingress and egress to all portions of his property was a question of material fact that would preclude a judgment on the pleadings.

¶ 9 A hearing on the motion for judgment on the pleadings was held on January 9, 2023. At the hearing, counsel for the plaintiff stated that the easement by implication that plaintiff was seeking was an easement by necessity. Otherwise, counsel for both sides presented the same arguments that were set forth in their written pleadings. Following the presentation of arguments, the trial court made, *inter alia*, the following oral pronouncements:

5

"Count III was a little more tricky, easement by implication, and making the claim that it's a necessity and that your client can't get to the back side of this property now that the easement has terminated. You even say in your own Complaint that you're aware there is this deed. You're aware that the easement has terminated and that has now caused your client, I guess supposedly as of 2017, no, I guess, written easement or legal easement to get there unless this Court decides that he needs one by necessity.

I'm going to be honest, you know, sometimes you're stuck with the facts that you get and the circumstances that you get. I can't—I have no reason—I can't understand for the life of me why this lady would have deeded her easement away to the back side of her property unless she just thought there was some other way she could get there some day, but the bottom line is—I mean, it's in writing that it's to go away.

* * *

I agree with Mr. Terlizzi. An easement by necessity arises when the owner of land conveys or retains an inner portion of the land thereof which is entirely surrounded by the rest of the property or the property of strangers, that the easement is implied in that courts attempt to ascribe an intention to parties who themselves did not put any such intention into words, but they did put it into words. She specifically contracted it away, which means anyone who takes the property after her would be on notice that the easement is going to terminate. It says because the intention of the parties to the conveyance that severs title is the crucial consideration, whether an easement exists depends wholly on the circumstances at the time of the severance of title. Thus, if an easement by implication does not arise at the moment of severance, a change in circumstances since the severance, no matter how great, cannot create such an easement."

6

The trial court granted the motion for judgment by oral pronouncement and followed it with a written order entered on January 10, 2023, which entered judgment in favor of the Hackmanns as to counts II and III.

¶ 10    On January 23, 2023, plaintiff filed a motion to reconsider. In support of the motion to reconsider, plaintiff alleged that the trial court had made no determination that plaintiff had alternative means of reasonable access to his property and that the court considered facts that were not pleaded, thus the order was entered in error. On January 24, 2023, the Hackmanns filed a response to plaintiff's motion to reconsider. On January 27, 2023, the trial court viewed the property at issue with the parties. Later the same day, the court conducted a hearing on the plaintiff's motion to reconsider and denied the motion to reconsider.

¶ 11    The matter proceeded to a bench trial on count I on April 28, 2023. The first witness called by the plaintiff was Jennifer Brown. Brown testified that she worked part-time for Clay County 911 and full-time for the City of Flora as a 911 dispatcher and dispatch supervisor. She has worked for Clay County 911 since August 2005, and she pays the bills, maintains equipment, assigns an address to structures as needed, and homes. Brown testified that she is a board member of the Emergency Telephone System Board (ETSB), which is also referred to as Clay County 911.

¶ 12    Brown testified that part of her duties involved 911 addresses. She uses the Master Street Address Guide (MSAG). She stated that Clay County 911 does not have any involvement in placing road signs and that was done by the Clay County Highway Department.

¶ 13    Brown testified that she was familiar with Tamarack Road in Songer Township because it was in the MSAG and because there were addresses on there that she had given out. She was unaware if there are currently road signs on Tamarack Road.

7

¶ 14    Brown explained the process of assigning a 911 address involved a person notifying her they were moving to a road. She stated as long as the driveway was established off a road, she would obtain measurements, place the location on the map, and assign a road number or house number. Brown testified that "911 can name, like, a driveway. If somebody has four or five structures, three or four structures on, say, a driveway, then it will become named. 911 does not have any say if it becomes a road or not." A name is assigned for emergency purposes.

¶ 15    Brown was shown plaintiff's exhibit 1, a document dated May 28, 2003, regarding the maintenance of 911 road signs. Plaintiff's exhibit 2 was identified as an agreement between ETSB and the LAS system in Clay County. Plaintiff's exhibit 3 was identified as a two-page document of a map from 2001 with locations circled for the placement of 911 road signs. Brown identified Tamarack Road on the map. Plaintiff's exhibit 4 was identified as a Clay County 911 map. Brown testified that the purpose of the map was to provide it to people and emergency services so they can find roads easier. She identified Tamarack Road on the map.

¶ 16    On cross-examination, Brown testified that names and numbers were assigned to roads to allow emergency personnel to find people that call 911. She agreed that assigning a 911 name to any structure, pathway, or road had nothing to do with whether it was a public road.

¶ 17    The next witness called by the plaintiff was Patrick O'Donnell. O'Donnell testified that he is the plaintiff's first cousin. O'Donnell lives on Royal Palm Road in Xenia, Illinois, and has lived there for more than 25 years.

¶ 18    O'Donnell testified that he was familiar with Tamarack Road because his parents and grandparents lived around that area, and because his house is approximately four miles away. O'Donnell testified that his father and uncle opened Camp Greendale in the area. O'Donnell

8

testified that Tamarack Road had been around for over 25 years. He recalled 911 signs being placed approximately 20 years ago. He estimated that the road has existed for approximately 30 years.

¶ 19    O'Donnell testified that he had driven the entire length of the Tamarack Road, and the last time he had done so was in the past "couple of years." He stated he had not been on Tamarack Road recently because he had been busy. He had been in the area more often about three years prior when he was cutting grass and maintaining the property after the plaintiff's mother, Judith Franklin, died. O'Donnell was at the property on a weekly basis at that time and he saw other vehicles driving on Tamarack Road. He recognized some of the vehicles from people around the lake but did not recognize them all. When asked how many vehicles he might see on average, he testified that "[s]ometimes there wasn't any over there when I was mowing and stuff. But there was—once in a while somebody would drive through."

¶ 20    O'Donnell testified that Tamarack Road mostly consisted of gravel, but a small section did not have gravel on it just before you go across the dam. He was shown plaintiff's exhibit 5, which was identified as an aerial photograph of Tamarack Road. O'Donnell testified that he saw people use Tamarack Road during the past 20 years, "[e]specially the people that live there."

¶ 21    On cross-examination, O'Donnell testified that he believed there was a permanent resident that had property next to Tamarack Road. He believed the person had lived there year-round for about two years. O'Donnell testified that the plaintiff had placed a locked gate on Greendale Road at some point. Tamarack Road comes off of Greendale Road. The only places you can access from Tamarack Road are structures adjoining Tamarack Road. There are no public businesses there. Most of the structures are part-time, summer lake houses. O'Donnell testified that he saw residents use Tamarack Road, as well as FedEx and UPS delivery services. He testified that the lake is not open to public fishing.

¶ 22    O'Donnell testified that the people that own the property are the ones that maintain the dam on Tamarack Road. He was not aware of any public body, the State, the township, the county, or the federal government maintaining Tamarack Road.

¶ 23    The plaintiff was the next witness to testify. The plaintiff testified that he had owned property at 41 Tamarack Road since 2017. He knows the Hackmanns because they own the property to the west and northwest of his parcel on Tamarack Road. The plaintiff testified that Tamarack Road connects to Greendale Lake drive at two points.

¶ 24    Prior to owning the parcel, the plaintiff testified that he visited the property on Tamarack Road because his mother lived there full-time beginning in 1985. He would visit the property to see his mother a few times a year. He also had a RV parked on the property for some time in the past.

¶ 25    When the plaintiff acquired full ownership of the parcel in 2019, he visited it more often. During grass cutting season, he would visit "a couple times a month," and "[n]ot so much in the wintertime. Regarding how often the plaintiff saw vehicles on Tamarack Road, he testified that "[m]ost of the activity is on the west side." Additionally, he stated, "I mean, it is not a hugely traveled road; but occasionally, um, vehicles would come through. More golf carts, side-by-sides that would drive through."

¶ 26    The plaintiff testified that at the end of 2019 or beginning of 2020 he placed a locked gate in front of Tamarack Road on the east side where it connected to Greendale Lake. He stated he opened the gate when he learned the road was on the 911 system. He believed that the locked gate was in place for approximately one year before he opened it. The plaintiff testified that he gave the Hackmanns and his cousin, Patrick O'Donnell, keys to the gate.

¶ 27    The plaintiff testified that he is familiar with the location of residences along Tamarack Road. There are some homes, cabins, RVs, and trailers along Tamarack Road. He testified that currently you cannot drive the length of Tamarack Road because a gate was placed in the middle of Tamarack Road, and he believed it was placed there by the Hackmanns.

¶ 28    The plaintiff was questioned regarding vehicles traveling on Tamarack Road since he opened the locked gate he placed. He testified that he is not at the property full-time, so he installed a security camera system on the property. The camera system begins recording once movement is detected. The plaintiff was shown plaintiff's exhibit 6, which he identified as a photograph of the video footage from the security cameras showing a mail delivery vehicle. The photograph did not contain a date, but the plaintiff believed it was from the past year. Plaintiff's exhibit 7 was a photograph from the camera system that showed a neighbor named Sunderland driving a utility terrain vehicle (UTV) on the road on July 5, 2022. Plaintiff's exhibit 8 showed the same thing from a different camera. Plaintiff's exhibit 9 showed a photograph of a dumpster being delivered on July 6, 2022. Plaintiff's exhibit 10 was a photograph of a maroon truck using the road on July 10, 2022. The plaintiff believed the truck to be owned by Patrick O'Donnell. Plaintiff's exhibit 11 was a different view of exhibit 10. Plaintiff's exhibit 12 showed a UPS vehicle on Tamarack Road on July 12, 2022. Plaintiff's exhibit 13 and 14 showed an unknown truck using Tamarack Road. Plaintiff's exhibit 15 showed a Clay Electric vehicle on September 21, 2022. The plaintiff testified that he believed the electric company was viewing a power pole that day to possibly replace it. Plaintiff's exhibit 16 showed another unknown truck. Plaintiff's exhibit 17 showed an HVAC company vehicle using the road on September 27, 2022. Plaintiff's exhibit 18 and 19 showed the Sunderland neighbor driving a UTV on the road on October 5, 2022. Plaintiff's exhibit 20 showed his nephew in a truck and RV. Plaintiff's exhibit 21 showed an LP truck. Plaintiff's exhibit 22

11

showed an unknown van. Plaintiff's exhibit 23 showed an unknown truck. Plaintiff's exhibit 24 showed an unrecognized golf cart on November 18, 2022. Plaintiff's exhibit 25 showed an all-terrain vehicle (ATV) on Tamarack Road. Plaintiff's exhibits 26 and 27 showed an unknown white truck. Plaintiff's exhibits 28 and 29 showed a FedEx truck. Plaintiff's exhibit 30 showed a different FedEx truck. Plaintiff's exhibit 31 showed an unknown truck on February 20, 2023. Plaintiff's exhibits 32 and 33 showed a Wabash Communications vehicle. Plaintiff's exhibit 34 showed Patrick O'Donnell's truck. Plaintiff's exhibit 35 showed a garbage truck. Plaintiff's exhibit 36 showed a truck with a roll off dumpster. Plaintiff's exhibits 37 and 38 showed a white pickup truck. Plaintiff's exhibits 39 and 40 showed the township assessor's truck. Plaintiff's exhibit 41 showed a FedEx van. Plaintiff's exhibit 42 showed a neighbor on his UTV with a landscaping company on April 15, 2023. The plaintiff took two videos as he drove the length of Tamarack Road. They were marked as plaintiff's exhibits 43 and 44 and played for the trial court.

¶ 29 On cross-examination, the plaintiff agreed that prior to his obtaining full ownership of the property on Tamarack Road he visited approximately six times a year. He agreed that he could not offer any testimony about the use of Tamarack Road prior to 2019, other than those dates he visited.

¶ 30 The plaintiff testified he did not become aware of the easement his mother had reserved until he became the full owner of the property in 2019. He testified he was not aware of it when he was a partial owner from 2017 through 2019.

¶ 31 The plaintiff agreed that all of the photograph exhibits he testified to were taken after May 16, 2022. He agreed that the photographs did not provide any evidence of the use of the road for the 15-year period. The only other testimony about the 15-year use would have been from his cousin, Patrick O'Donnell.

12

¶ 32    As to the photographs that showed vehicles that the plaintiff did not recognize, he agreed that he did not know if those vehicles were part-time residents, invited guests, or even someone that made a wrong turn. He agreed that the structures along Tamarack Road are all residential. The plaintiff admitted he assumed Tamarack Road was a public road because it was a 911 road. He also assumed if it was a public road, the dam would be maintained by the township.

¶ 33    At the conclusion of the plaintiff's testimony and his case, the Hackmanns moved for a directed verdict. The motion was denied, and the bench trial continued.

¶ 34    Counsel for road commissioner Allen was the next to put on evidence. The next witness to testify was Darin Koelm. Koelm testified he was employed by Clay County as the Clay County engineer. Koelm testified that he is a licensed engineer in the State of Illinois. Additionally, he passed a proficiency test issued by the Illinois Department of Transportation (IDOT) and completed an interview process with IDOT before he could be appointed to the position of Clay County engineer. He has served as the Clay County engineer for 6½ years. He testified that he was responsible for the distribution of motor fuel tax funds, inspecting bridges, and maintaining roads of the county.

¶ 35    Koelm testified that he was familiar with Tamarack Road. He testified that his office had received inquiries and questions about Tamarack Road in the past, so there was a file on it. He testified that Darrell Allen, the Songer Township road commissioner, had contacted him about Tamarack Road. Koelm testified that he looked through the records maintained by his office and the county clerk's records and found no records to indicate that Tamarack Road had a public dedication making it a public road.

¶ 36    Koelm testified that Greendale Lake Drive is a public road and motor fuel tax is collected for it. Tamarack Road is not identified on the IDOT motor fuel tax maps, and motor fuel tax is not

collected for Tamarack Road. Koelm testified that, to his knowledge, Tamarack Road has not been maintained by the county or the township. Koelm categorized Tamarack Road as a private drive.

¶ 37    The next witness to testify was Darrell Allen. Allen testified that he is the current road commissioner for Songer Township and has served as such since April 1997. As road commissioner, he maintains the public roads. He testified he is familiar with Tamarack Road. Allen testified that he maintains Glendale Lake Drive, except for a section maintained by Xenia Township. Allen testified that he has not maintained Tamarack Road since he became the road commissioner in 1997.

¶ 38    When the present action was filed, Allen testified that he and the supervisor reviewed township records to determine if Tamarack Road had been dedicated as a public road, and he found no such records. Allen testified that Tamarack Road was not on the motor fuel tax maps. Allen testified that the gates and posts for the gates indicated it would be a private drive. He also testified that this would prohibit receiving any motor fuel taxes. On cross-examination, Allen agreed he had not sat and watched traffic on Tamarack Road.

¶ 39    The trial court heard arguments of counsel. Additionally, the trial court inquired of Jeff Hackmann regarding the placement of a gate. Hackmann testified that he placed the gate two or three years ago.

¶ 40    The trial court took the matter under advisement. The counterclaim for trespass and motion for sanctions were reserved.[2]

¶ 41    On May 11, 2023, the trial court entered a three-page written order in favor of the defendants as to count I of the amended complaint because the plaintiff failed to meet his burden.

_____

[2]The counterclaim and motion for sanctions remain pending. This appeal is before us pursuant to a Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding and order.

The trial court's order recounted the evidenced presented and, *inter alia*, made the following findings:

"Based on the testimony and evidence presented, the road in question, 'Tamarack Road' was never deemed public through dedication. ***

*** Furthermore, Darrell Allen, the Road Commissioner for Songer Township testified that 'Tamarack Road' is not a public road; and therefore, he does not maintain this road. *** Additionally, Darin Koelm, the Highway Engineer for Clay County, Illinois, testified that this road is not maintained by the county and it is not a public road. ***

\* \* \*

As evidence for his case, Plaintiff called his first cousin, Pat O'Donnell to testify. *** Mr. O'Donnell testified that there are no businesses on the property and there is really no reason for a member of the public to be out there; furthermore, the lakes and/or ponds on the property are not open for fishing to the public. He also testified to the best of his knowledge the owners' [*sic*] of the property maintain 'Tamarack Road'. He testified that, from time to time, over the years, he had seen vehicles traveling on the road, he testified that some of the people he knew, and other people he did not know. He also testified that the Plaintiff, at one time, actually put up a gate with no trespassing and private property signs blocking entry onto the road. ***

As further evidence for his case, Plaintiff, testified and provided video and photo exhibits to try and establish that the pathway is indeed a public road. Plaintiff provided photos of multiple different vehicles driving on 'Tamarack Road'. *** [T]he Plaintiff basically provided the Court with photo evidence of how the roadway has been used since May of 2022. Moreover, even if the Court were to consider these photos, the majority of

15

them are vehicles that should be there. They were either residents, service trucks, mailmen, UPS, or FedEx. There were only a few vehicles that were not identified, so we don't know if they were residents, an invited guest, whether they were there to provide a service to a resident, or if they were simply just lost. We don't know. *** Furthermore, Plaintiff admitted that he had put up a gate at the end of 2019 prohibiting vehicles from pulling onto the roadway, and that his gate closed off the entry way to the road for approximately one year, until he reopened the gate. ***

In conclusion, after being provided with all the testimony and evidence in this case, it is clear to this Court that the Plaintiff has failed to meet his burden. For the above reasons:

This Court denies all relief sought by the Plaintiff in count I of the amended complaint. This Court makes a finding that 'Tamarack Road' as designated in the amended complaint as 'Exhibit A' is a private pathway, and that neither the Plaintiff nor the public have any right of access or use of said pathway. With the above stated, the Plaintiff obviously has the right to use said portion of this private pathway that is on his property."

The plaintiff filed a timely notice of appeal. Additional facts will be provided, as necessary, in the analysis.

¶ 42                                    II. ANALYSIS

¶ 43            A. Judgment on the Pleadings—Count III Easement by Implication

¶ 44    On appeal, the plaintiff challenges the trial court's granting judgment on the pleadings as to count III of the amended complaint in favor of defendants. "We review the grant of judgment on the pleadings *de novo*." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). "*De novo* review means that we perform the same analysis that a trial judge would perform. [Citation.] In addition, we may affirm on any basis appearing in the record, whether or not the trial court relied

16

on that basis and whether or not the trial court's reasoning was correct." *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25.

¶ 45    "A motion for judgment on the pleadings is, like a motion for summary judgment, limited to the pleadings." *Pekin Insurance Co.*, 237 Ill. 2d at 455. "In ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). When considering a motion for judgment on the pleadings, all well-pleaded facts as set forth in the pleadings of the nonmoving party are treated as admitted and the fair inferences drawn therefrom. *Pekin Insurance Co.*, 237 Ill. 2d at 455.

¶ 46    Count III of plaintiff's amended complaint sought to establish an implied easement. "An easement is an individual's right or privilege, for a limited purpose, to either pass over or use the land of another." *Katsoyannis v. Findlay*, 2016 IL App (1st) 150036, ¶ 28. An implied easement is the result of the intention of the parties to a conveyance. *Emanuel v. Hernandez*, 313 Ill. App. 3d 192, 196 (2000). "There are two types of implied easements—the easement by necessity and the easement implied from a pre-existing use." *Granite Properties Ltd. Partnership v. Manns*, 117 Ill. 2d 425, 435 (1987). In this case, the plaintiff was seeking an implied easement by necessity.

¶ 47    To establish an implied easement, the burden is on "the plaintiff [to] present evidence that his property and the defendant's property were owned by a common grantor, that the properties were severed, and that at the time of the severance his parcel became landlocked." *Gacki v. Bartels*, 369 Ill. App. 3d 284, 291 (2006). Further, the plaintiff must present evidence that the easement was necessary at the time of the severance and that it is currently still necessary. *Id.* at 292.

"Additionally, the plaintiff must show that there were and are no alternative means of access to his property." *Id.*

¶ 48    As set forth above, when considering a motion for judgment on the pleadings, all well-pleaded facts alleged by the nonmoving party are treated as admitted. In this case, many of the allegations were expressly admitted by the Hackmanns.

¶ 49    When considering the judgment on the pleadings, the following admissions are relevant to our disposition:

- The plaintiff is the current owner of real estate identified as Clay County Parcel Identification Number (PIN) 09-31-300-023.

- The Hackmanns are the current owners of real estate identified as Clay County PIN 09-31-300-024.

- In October 1974, Judith Franklin was conveyed an interest in real estate now identified as Clay County PINs 09-31-300-023 and 09-31-300-024.

- On or about July 19, 2007, Judith Kay Franklin and her brother, Michael Roy O'Donnell, conveyed their interest in real estate identified as Clay County PIN 09-31-300-024 to Jimmy Dale Sunderland Sr. and Beverly May Sunderland by Warranty Deed. Said 2007 Warranty Deed contained the following:

    "The Grantor, Judith Kay Franklin hereby reserves an easement for purposes of ingress and egress over, across, and through the lands conveyed herein on an existing roadway for access to the real estate owned by Judith Kay Franklin lying East of the lands conveyed herein. This easement is a non-exclusive easement and the Grantees herein may use the same for purposes of their own use. However, upon the death of Judith Kay Franklin

18

or in the event Judith Kay Franklin conveys or transfers ownership of the real estate lying East of the aforedescribed real estate being conveyed herein, said easement shall terminate."

- Exhibit A to plaintiff's amended complaint shows that PIN 300-024 is the real estate lying east of PIN 300-023.

- "On or about February 6, 2017, Judith Kay Franklin, as Grantor, conveyed her undivided one-half interest in parcel no. 09-31-300-023 via Quitclaim Deed to Tracy Kay Scroggins, Ross E. Shepard, Jr., and Camie Ananias, as Grantees."

- "As a result of the termination of the easement across Tamarack Road through Hackman's [*sic*] property in 2017, Plaintiff, Shepard lost access to the northwest portion of his land which is otherwise landlocked by lakes."

¶ 50    When considering an implied easement,

"[i]t is crucial to recognize that an implied easement is the product of the intention of the parties to the conveyance. [Citation.] The easement is 'implied' in that courts attempt to ascribe an intention to parties who themselves did not put any such intention into words at the time of the conveyance. [Citations.] Because the intention of the parties to the conveyance that severs title is the crucial consideration, whether an easement exists depends wholly on the circumstances *at the time of the severance of title*. [Citations.] Thus, if an easement by implication does not arise at the moment of severance, a change in circumstances since the severance, no matter how great, cannot create any such easement. [Citations.]" (Emphasis in original.) *Emanuel*, 313 Ill. App. 3d at 196.

¶ 51    In conducting our *de novo* review, we find that judgment on the pleadings entered in favor of defendants as to count III was proper. The plaintiff's own amended complaint established that

19

he would be unable to prove all of the necessary elements, specifically the first two elements set forth above.

¶ 52    The amended complaint established that in 1974, Judith Franklin had an interest in both parcel 09-31-300-023 and parcel 09-31-300-024. In 2007, Judith Franklin was the common grantor. At that point in time, she severed parcels 09-31-300-023 and 09-31-300-024 by transferring parcel 09-31-300-024 to the Sunderlands. When Judith Franklin severed the parcels, the warranty deed included an easement for Judith Franklin's own use of a road on parcel 09-31-300-024 for the remainder of her life or until she transferred the property to the east, parcel 09-31-300-023. Thus, 2007 is the point in time we would consider if the parties intended to create an easement but failed to do so. In this case, we have the intention expressly stated in writing. Judith Franklin retained an easement for her life or until she transferred the property. When taking the pleadings as true, we agree that the plaintiff's property is currently landlocked; however, he is unable to meet the other elements. Further, due to the express easement that Judith Franklin retained, the property was not landlocked in 2007 at the time of the severance. Accordingly, we affirm the judgment on the pleadings as to count III in favor of the Hackmanns.

¶ 53    Following entry of the judgment on the pleadings, plaintiff filed a motion to reconsider the judgment as to count III. As we have already determined the substantive issue; namely, that the trial court properly granted the judgment on the pleadings, it is not necessary to consider whether the motion to reconsider was property denied.

¶ 54                    B. Judgment Following Bench Trial

¶ 55    "The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence." *Camelot, Inc. v. Burke Burns & Pinelli, Ltd.*, 2021 IL App (2d) 200208, ¶ 50. When sitting as the trier of fact in a bench trial, the trial court makes findings of fact and

20

weighs all the evidence in reaching a conclusion. *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 483-84 (2002). "When a party challenges a trial court's bench-trial ruling, we defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence." *Id.* at 484. When applying this standard of review, we give great deference to the trial court's credibility determinations, and we will not substitute our judgment for that of the circuit court " 'because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses.' " *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35 (quoting *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007)). "A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Samour*, 224 Ill. 2d at 544. The trial court's findings and judgment will not be disturbed "if there is any evidence in the record to support such findings." *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959).

¶ 56    Count I of the plaintiff's amended complaint sought a declaration that Tamarack Road "is a public road as defined under 605 ILCS 5/2-202 in that it has been 'used by the public as a highway for 15 years.' " Section 2-202 of the Illinois Highway Code provides as follows:

> "Highway—any public way for vehicular traffic which has been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which has been established by dedication, or used by the public as a highway for 15 years, or which has been or may be laid out and connect a subdivision or platted land with a public highway and which has been dedicated for the use of the owners of the land included in the subdivision or platted land where there has been an acceptance and use under such dedication by such owners, and which has not been vacated in the pursuance of law. The term 'highway' includes rights of way, bridges, drainage structures, signs, guard rails, protective structures, shared-use

21

paths for nonvehicular public travel, sidewalks, bike paths, and all other structures and appurtenances necessary or convenient for vehicular traffic. A highway in a rural area may be called a 'road', while a highway in a municipal area may be called a 'street'." 605 ILCS 5/2-202 (West 2022).

¶ 57    In the plaintiff-appellant's opening brief on this issue, the plaintiff points to the testimony provided by Patrick O'Donnell and the plaintiff and urges us to find that the trial court did not give proper weight to this evidence. On the other hand, the plaintiff argues that the trial court applied too much weight to the plaintiff's own testimony that he placed a locked gate at the entrance to Tamarack Road for a period of approximately one year. Additionally, the plaintiff argues that the trial court improperly relied upon the legal conclusions offered by Allen and Koelm that Tamarack Road was not a public road. On review, the plaintiff is asking this court to reweigh the evidence.

¶ 58    We reiterate that on review of a judgment following a bench trial, this court will not reweigh the evidence or reassess the credibility of the witnesses. With regard to all of its findings and conclusions, the trial court was in the best position to make a credibility assessment of the testimony of the witnesses in this case.

¶ 59    We have thoroughly reviewed the record on appeal and conclude that it does not demonstrate that the trial court's ultimate finding that the plaintiff was unable to establish his burden of proof as to count I of the amended complaint was against the manifest weight of the evidence. The trial court heard vague and conflicting testimony from Patrick O'Donnell that he sometimes saw vehicles on the road, but he did not know why they were there. Additionally, O'Donnell testified there was no reason the public would have to use the road, and that he believed that it was maintained by the property owners. The plaintiff testified that he occasionally saw other vehicles on the road when he visited his mother. He also produced photographs showing vehicles

22

on the road after 2022. He testified that he placed a locked gate at the entrance of Tamarack Road for a period of one year. Also, he testified that the basis for his belief that Tamarack Road was a public road was due to its designation as part of the 911 system. The trial court also heard from county and township officials that no record of a public dedication of the road was located, and that the road was not maintained by the county or the township.

¶ 60    After considering all of the evidence presented, we cannot find that the opposite conclusion was clearly evident in this case nor was the trial court's finding arbitrary, unreasonable, or not based on the evidence. *Samour*, 224 Ill. 2d at 544. Further, we cannot find that the record is absent of any evidence to support the trial court's findings. Accordingly, we affirm the trial court's order of May 11, 2023. *Brown*, 18 Ill. 2d at 102.

¶ 61                                    III. CONCLUSION

¶ 62    For the foregoing reasons, we affirm the trial court's orders entered January 10, 2023, January 27, 2023, and May 11, 2023.


¶ 63    Affirmed.