2024 IL App (2d) 240204-U
No. 2-24-0204 & 2-24-0446 cons.
Order filed November 13, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* G.A. and D.A., Minors | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | Nos.  20-JA-44 |
| | ) |       20-JA-125 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Christina A.L., | ) | Kathryn Karayannis, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Under the procedure set forth in *Anders*, there are no issues of arguable merit on appeal. We, therefore, grant court-appointed counsel's motion to withdraw as counsel on appeal.

¶ 2    On March 4, 2024, the trial court terminated the parental rights of respondent, Christina A.L., to her two minor children, G.A. and D.A.[1] Christina filed a timely notice of appeal.

---

[1]G.A. and D.A. have different fathers. Daniel P., the father of G.A. surrendered his parental rights on October 10, 2023, and consented to G.A.'s adoption by his foster parents.

¶ 3　　Attorney Andrea Jordan was appointed by the trial court to represent Christina during this appeal. Pursuant to the procedure set forth in *Anders v. California*, 386 U.S. 738 (1967), Attorney Jordan sought leave to withdraw as appellate counsel. In her motion, appellate counsel represents that she has read the full record and has not discovered any issue that would warrant relief in this court. In support of the motion, she has filed a memorandum of law which summarizes the proceedings in the trial court.

¶ 4　　Appellate counsel represents that she mailed a copy of the motion to Christina and informed her that the motion was necessary because there was no meritorious issue that counsel could raise on appeal. The clerk of this court also notified Christina of the motion and informed her that she was afforded an opportunity to present, within 30 days, any additional matters to this court. Christina filed a response, claiming among other things, that she complied with all the necessary services, that during the process to terminate her parental rights, she did not receive fluid communication between herself, the social workers, and the Department of Children and Family Services' contracting agencies, and that there was no adequate interpreter provided, such that the majority of the process was unintelligible to her.

¶ 5　　After carefully reviewing and examining the record, as well as the motion to withdraw and the accompanying memorandum of law, we agree with appellate counsel that it is not possible for her to raise any meritorious issues. The record provides that, in August 2019, Christina reported that her partner and the father of D.A., Doroteo O.G.G.,[2] abused substances, hit her, shoved her,

---

[2]The record on appeal refers to Doroteo occasionally as Omar, in addition to two different last names, sometimes with different spelling, but we will refer to him as Doroteo in this disposition.

and attempted to strangle her in the presence of both her children. D.A. was an infant at the time, however, G.A., who was two years old, witnessed the violence against her. She reported another incident of physical violence sustained from Doroteo in October 2019, after which she sought an emergency order of protection. She further reported that Doroteo was physically violent towards her and G.A. on April 8, 2020. The Elgin Police Department was dispatched to her home after a report of domestic battery. A police officer who responded found that Christina had sustained bruising and swelling around her right eye. Doroteo was placed under arrest for domestic battery. In case number 20-JA-44, D.A. was removed from Christina's care on April 13, 2020, after the trial court found she was not cooperating fully in completing intact family services. Christina failed to complete domestic violence counseling or a mental health assessment. At a hearing on June 11, 2020, Christina stipulated that the State's witnesses would be able to prove that domestic violence occurred in the home and to probable cause to find D.A. neglected, requiring the immediate and urgent necessity to remove D.A. from the home.

¶ 6    After the trial court found Christina unfit on July 9, 2020, D.A. was made a ward of the court. At that time, G.A. was living with his maternal grandfather, his legal guardian, who left G.A. unsupervised with Christina on August10, 2020. The Department of Children and Family Services (DCFS) had previously informed him that Christina could not be alone with G.A. based on the finding of unfitness. On August 24, 2020, the trial court entered a temporary custody order removing G.A. from his grandfather's custody in case number 20-JA-125. DCFS placed G.A. in a foster home on August 28, 2020.

¶ 7    The trial court ordered Christina to cooperate with DCFS and its contracting agencies, Renacer Latino, Turning Point, and the Community Crisis Center, among others. She was referred for parenting classes, anger management, individual therapy, a substance abuse evaluation, a

psychiatric evaluation, a parenting capacity evaluation, couples therapy, and parenting coaching. While she completed some of the services, she took one year and six months to complete 10 of the domestic violence classes. Christina minimized the past domestic violence in her relationship with Doroteo. A DCFS report stated that Christina "continues to demonstrate a lack of understanding of domestic violence and the risk posed not only to her but to her children in the home." Indeed, Christina was unsuccessfully discharged from parenting coaching with Renacer Latino for failing to provide a safe environment for G.A. and D.A. In addition, she was not consistent with her random during screenings and she tested positive for alcohol. She was referred to a substance abuse evaluation, but did not answer the phone or return phone calls from the case worker.

¶ 8    On May 15, 2023, the State filed petitions in both cases to terminate Christina's parental rights, alleging, among other things, that she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) protect the children from conditions within their environment that were injurious to their welfare (*id*. § 1(D)(g)); and (3) make reasonable efforts under three separate nine-month periods (*id*. § 1(D)(m)), to correct the conditions which were the basis for the removal of the children after an adjudication of neglected minor, abused minor, or dependent minor under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq*. (West 2022)). The petitions specified the three separate nine-month periods as (1) February 9, 2021 to November 9, 2021, (2) November 10, 2021 to August 10, 2022, and (3) August 11, 2022 to May 11, 2023. The State asserted that it was in the best interests and welfare of the minors that Christina's parental rights be terminated and that DCFS remain legal guardian and custodian of the minors, with the power to consent to the adoption of the minors.

¶ 9　　On December 28, 2023, the trial court conducted a hearing by videoconference on the State's petitions to terminate parental rights. The court took judicial notice of the children's birth certificates and previous orders entered by the court dating back to April 2020. The State introduced 16 exhibits at trial with no objection.

¶ 10　　Damaris Colon, a parent coach at Renacer Latino, testified on direct examination that she began working with Christina and Doroteo in October 2020, continuing parenting coaching sessions until March 2022. During one session on December 22, 2021, Colon had a conversation with Christina in the restroom, at which point, Christina stated that she did not feel safe around Doroteo and expressed fear for her children around him "due to his brother *** selling drugs." Colon testified that she discharged Christina as having unsuccessfully completed the program because Christina continued to reside voluntarily with the same person who continued to perpetrate domestic violence against her. Christina continued to minimize the domestic violence and expressed fear of disclosing additional information. Christina specifically told Colon that she continued to live with Doroteo by her own choice. The cross-examination of Colon included testimony demonstrating how Christina used her learned parenting skills with the children, the creation of a safety plan, and the alleged abuse. After a break in testimony, Colon advised that she was unable to continue testifying that day. The trial court allowed the State to reconnect with Colon on February 8, 2024, to complete her cross-examination.

¶ 11　　Next, Christina testified that her children entered DCFS care in 2020 because of domestic violence between her and Doroteo. She recalled that Doroteo had been arrested for domestic battery in 2020, but she did not press charges. Christina stated that she was still in a relationship with Doroteo and was residing with him. She did not recall an incident in September 2023 when he was arrested for domestic battery. Christina expressed her belief that the children would not be

safe with Doroteo due to the domestic violence. She remained in a relationship with Doroteo because he said that "he would change, he would get better." When asked on cross-examination why she remains in a relationship with Doroteo, she stated, "when somebody asks you for a third or fourth or fifth opportunity, you give it to them, and that is what they asked us in order to get the kids back." She also stated that she could afford rent for an apartment without him. In addition, Christina admitted that she had testified positive for alcohol while trying to complete the recommended services. Finally, she stated that if the children returned home, she would not plan to continue residing with Doroteo. However, Christina then contradictorily stated that a social worker, Anita Cayton, told her that she and Doroteo needed to have an apartment together for the children to come home.

¶ 12    When the hearing continued on February 8, 2024, Colon informed the trial court that she could not continue testifying because she was having an emotional breakdown. Christina's counsel requested the court to strike her testimony because she could not complete her cross-examination. The court denied the request because Christina's testimony corroborated Colon's observations and conclusions. The court stated that Chrisina herself acknowledged that she continued to reside with Doroteo and found Colon's testimony to be credible and responsive.

¶ 13    The State also presented the testimony of the Elgin police officer who responded to the domestic violence dispatch on September 5, 2023. Officer Salgado testified regarding the injuries he observed to Christina.

¶ 14    Cayton testified that she never told Christina to remain in a relationship or continue living with Doroteo. DCFS Child Welfare Specialist Helenn McManaman testified that she was assigned to Christina's case due to "domestic violence and substance abuse for Intact failure." According to McManaman, Christina completed parenting classes, anger management classes, a substance

abuse evaluation, and individual therapy, but she was unsuccessfully discharged from parenting coaching and had not completed couple's therapy. Christina also refused to participate in any services for alcohol or substance abuse and refused to attend the recommended women's support group. In addition, McManaman attempted numerous times to advise Christina of drug screenings, but she did not answer McManaman's phone calls or return calls and text messages. Christina had tested positive for alcohol in November 2021. McManaman attempted to send Christina to "many random drug screenings and she failed to appear to the random drug screens." Finally, McManaman testified that Doroteo told her in December 2023 that he did not care if his parental rights were terminated.

¶ 15    On March 4, 2024, the trial court found that the State presented clear and convincing evidence that Christina was unfit based on each of the three allegations as pled in its petitions to terminate parental rights. 750 ILCS 50/1(D)(b), (g), and (m) (West 2022). The court found Christina was not credible in relation to her descriptions of domestic violence, her living situation, and her continuing relationship with Doroteo. Further, the court found there was a lack of progress during any of the three nine-month reporting periods. The court concluded, "It's clear to the Court that these children would not be safe if they were returned to these parents, and since they are still together, they can't be returned to one of the parents individually."

¶ 16    Following the determination of unfitness, the trial court conducted a best interests hearing. The court considered the arguments of the parties, witness testimony, and the evidence presented, finding by a preponderance of the evidence that it was in the best interests of G.A. and D.A. that the parental rights of Christina and Doroteo be terminated. The court considered the statutory factors under section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)) as they applied to the children's best interests. The court found that each child was in a safe and

stable home and had loving relationships with their foster parents. The court also stated that "the case law supports the fact that the Court can look at the amount of time the children have been in care and their attachment to their foster placements, both of which support the ability for these children to be adopted by their current foster placements." The court permanently terminated the parental rights of Christina and Doroteo, changed the permanency goal to adoption, and awarded DCFS with the power to consent to the foster parents' adoptions of the children.

¶ 17 Although section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) set forth several grounds under which a parent may be deemed unfit, any one ground, properly proven, is sufficient to sustain a finding of unfitness. *In re Shauntae P.*, 2012 IL App (1st) 112280, ¶ 89. A trial court's determination of unfitness will not be overturned unless the finding is against the manifest weight of the evidence. *In re Michael M.*, 364 Ill. App. 3d 598, 606 (2006). In this case, the trial court's determination was not against the manifest weight of the evidence. We have no basis for finding that "the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 544 (2007).

¶ 18 The record shows that social worker Colon was unable to resume her cross-examination during the parental termination hearing. This was the sole due process concern raised by Attorney Jordan in her *Anders* motion. However, our review of the record supports that Christina, through her own testimony, corroborated Colon's concerns. Furthermore, the State presented enough evidence even without Colon's testimony to support a finding of parental unfitness as to both children. Based on our review of the record, there is nothing to indicate that the trial court erred in determining that Christina was unfit and that it was in the children's best interests that her parental rights be terminated.

¶ 19    In compliance with the mandate of *Anders*, we have carefully examined the record and the motions and briefs filed by Attorney Jordan. From our review, we agree with the conclusions of counsel that there are no issues of arguable merit on appeal. We, therefore, grant court-appointed counsel Jordan's motion to withdraw as counsel on appeal.

¶ 20    The judgment of the circuit court of Kane County is affirmed.

¶ 21    Affirmed.