# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974

---

| | |
|---|---|
| Appellate Court Caption | STAES AND SCALLAN, P.C., Plaintiff-Appellee, v. P. DANIEL ORLICH, Defendant-Appellant (Jeffrey Earl Gidney, Defendant). |
| District & No. | First District, Second Division<br>Docket No. 1-11-2974 |
| Filed | November 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The judgment entered against defendant for the attorney fees arising from the legal representation provided by plaintiff in a suit against defendant as an owner of a professional baseball team was not against the manifest weight of the evidence, especially when defendant failed to state why plaintiff's charges were unreasonable and the trial court's findings were based on the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-6030; the Hon. Daniel J. Pierce, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Buzogany Marks & Mueller LLC, of Chicago (James W. Marks, of counsel), for appellant. |
| | |
| | Staes & Scallan, P.C., of Chicago, for appellee. |
| | |
| Panel | PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion. |
| | Justices Quinn and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1     Staes & Scallan, P.C., a law firm (plaintiff), filed a verified complaint for breach of contract against defendants, and former clients, P. Daniel Orlich and Jeffrey Gidney. Defendants each owned a baseball team in the independent Northern League, a professional baseball league (League). Plaintiff sought payment of approximately $56,000 in fees and costs associated with its defense of defendants in a lawsuit brought by the League. Prior to trial, and after having a default judgment and subsequent judgment order entered against him, Gidney settled with plaintiff for $28,000. This amount represented approximately half of the amount plaintiff claimed it was owed from defendants. Following the bench trial against Orlich, the circuit court found in plaintiff's favor on the issue of liability only, taking the issue of damages under advisement. After allowing Orlich and plaintiff to file written submissions outlining their respective positions to charges contained in plaintiff's outstanding invoices, the circuit court entered judgment against Orlich in the amount of $23,397.35, plus prejudgment interest. At issue here is whether the circuit court's judgment order in the amount of $23,392.35, plus prejudgment interest, is against the manifest weight of the evidence. We hold that the circuit court's judgment order is not against the manifest weight of the evidence.

¶ 2                              JURISDICTION
¶ 3     On July 27, 2011, the circuit court entered judgment against Orlich. On September 12, 2011, the circuit court denied Orlich's motion for reconsideration and to reduce the judgment amount. On October 11, 2011, Orlich timely filed his notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                              BACKGROUND
¶ 5     Plaintiff filed a verified complaint for breach of contract against defendants seeking the

payment of fees and costs associated with its defense of defendants in the underlying lawsuit. In the underlying lawsuit, the League sought damages of $2 million from each defendant per a contractual liquidated damages clause. The League sought an additional $50,000 from Orlich for contractually agreed expenses. According to the complaint, defendants hired plaintiff to represent them in the lawsuit in November of 2007. Orlich signed a retainer agreement, while Gidney "verbally and continuously authorized" plaintiff to represent him. Plaintiff represented both defendants from November of 2008 "through early 2009." Plaintiff, at Orlich's request, had the lawsuit removed to the United States District Court for the Northern District of Illinois.[1] Plaintiff alleged that because of the services it provided defendants, the League agreed to "give up" its $4 million plus in monetary claims and provide Orlich with "franchise protection."

¶ 6　　Plaintiff further alleged that it was paid an initial retainer of $10,000, but that defendants had refused to pay any additional billed legal fees and expenses totaling $51,124.40. This was despite "their repeated acknowledgment to [plaintiff] that the monies were owed." Plaintiff agreed with defendants to a $5,000 reduction in fees "to resolve all billing disputes." Defendants never paid the adjusted amount and, therefore, "they breached the agreement that would have allowed for the reduction." Plaintiff requested that defendants be jointly and severally liable for $51,124.40, plus interest and costs.

¶ 7　　Orlich answered the complaint and denied liability. Gidney, however, did not appear or respond to the complaint. On June 24, 2010, the circuit court entered default judgment against Gidney in the amount of $56,397.09.

¶ 8　　On September 8, 2010, plaintiff, as a judgment creditor, filed a release of judgment against Gidney. The release stated that full satisfaction was received "by way of [a] $28,000 settlement."

¶ 9　　Trial was held October 6-7, 2010. Stephen Scallan, a partner in the firm, testified on plaintiff's behalf. Scallan testified that plaintiff was retained to represent defendants in October of 2007. The agreement was memorialized in a December 4, 2007, retainer agreement and signed by Orlich. The billing rates, as provided for in the retention agreement, listed the partners' rate as $400 an hour, while associates billed $275 per hour, and the firm's paralegals billed $60 per hour. Scallan described the factual allegations being made by the League against defendants. He testified that the League alleged defendants had voluntarily left the League and that it was owed $2 million from both defendants in liquidated damages. The League additionally sought the return of the trade logos used by the teams. An additional $50,000 in damages from travel expenses was sought from Orlich, while $25,000 was sought from Gidney. Orlich had agreed to a $50,000-a-year travel subsidy because his team was located farther away from the other members of the League. Orlich raised no legal or factual defenses to paying the $50,000-a-year travel subsidy.

---

[1]As discussed *infra*, the plaintiffs were ultimately unsuccessful in their attempts to have the lawsuit removed to the United States District Court. The district court remanded the matter, which plaintiffs appealed to the Seventh Circuit. Eventually defendants and the League settled their dispute in the underlying lawsuit.

¶ 10    Scallan also described the services plaintiff performed on defendants' behalf. This included calling several people who had practiced before the assigned circuit judge. Plaintiff researched the best forum to litigate the matter, eventually deciding Illinois was preferable to Florida and South Dakota. Research was also performed to determine jurisdiction in the possible forums.

¶ 11    The case was then removed to federal district court, which Scallan testified was a decision made by Orlich. The district court *sua sponte* issued an order remanding the matter to the circuit court of Cook County because the initial removal papers were defective in alleging residency, not citizenship, as required. When asked whether Orlich was billed for the mistake made by plaintiff, Scallan responded "[t]here was no billing whatsoever in connection with the docketing statement, the notice of appeal, the brief in the Seventh Circuit. There was also briefing on the jurisdictional issue in the Seventh Circuit, and he was charged for none of that."

¶ 12    After a motion to reconsider was denied, plaintiff appealed, which automatically triggered a settlement conference with a Seventh Circuit mediator. A mediation was scheduled, and Orlich and Gidney attended the conference. Prior to the mediation conference, plaintiff had an extensive meeting at its office to prepare. Scallan, his partner Andrew Staes, Orlich, and Gidney were all in attendance. Neither Orlich nor Gidney objected at the morning meeting to having both Staes and Scallan attend the mediation conference. At the mediation conference, Scallan testified he attended along with Orlich, Gidney, Staes, and an unidentified woman. Three lawyers appeared on behalf of the League; Pat Salvi, Jr., who owned a team in the League; his son; and Mr. Goldberg. No other owners from the League appeared, which caused Orlich to become very angry. Despite the absence of the other owners, the mediation conference lasted for three hours. A resolution was not reached that day. Plaintiff prepared a motion for sanctions based on the failure of the other owners of the League to appear at the mediation. The motion was eventually denied.

¶ 13    Following the denial of the motion for sanctions, "extensive settlement discussions" occurred with the mediator and the League. Eventually, the case was resolved. Scallan described the settlement, stating that Orlich and Gidney did not have to pay any money to the League. Orlich and Gidney were able to keep their baseball teams, insignia, rosters, and "all the other stuff that the League was looking to get back." Scallan thought the settlement was "favorable."

¶ 14    Plaintiff did not draft the settlement agreement "[b]ecause by that time, Mr. Orlich was doing it on his own and was far enough along in the process." Plaintiff's last involvement in the matter was a letter sent to the mediator "confirming in broad brush terms the settlement."

¶ 15    Scallan testified that plaintiff sought approximately $56,000 in fees. In settling, Gidney had paid $28,000, or half the amount sought. Orlich had paid an initial $10,000 retainer.

¶ 16    When asked whether the motion for removal required legal research, Scallan answered "[m]aybe a little amount." By January or February of 2008, plaintiff could not reach an agreement with Orlich over fees and they filed a motion to withdraw. Scallan believed the case settled in late February 2009 and that Stephen Leach, an attorney for the League, drafted

the settlement documents. He admitted that Orlich was directly involved in negotiating with Leach.

¶ 17    Orlich testified that he is a builder, real estate developer and a lawyer and had been a member of the Virginia bar since 1953, but ceased practicing law in the early 1960s. He owned Northern League Edmonton, which owned and operated the professional baseball team the Edmonton Cracker-Cats during the time in question. He hired Andrew Staes of the firm by mail. He had wanted the case to be removed to federal court whereupon he would then move to have the case dismissed. Staes had informed him that he was qualified to have the case removed and explained how long it would take. He admitted that Staes told him his billing rate was $400 an hour. Orlich only wanted to hire Staes, because the case was "simple." He did not want to hire several lawyers. Orlich denied that he was liable for $2 million in liquidated damages or the additional $50,000 in penalties. According to Orlich, the $50,000 penalty had been waived by the League "several months before." He did not think he owed plaintiff for some of plaintiff's initial charges because plaintiff was just "prospecting for business." He had no idea that Staes and Scallan were having conferences with each other for which he was getting billed. He stressed that he hired one lawyer and agreed to pay him $400 an hour. There was almost 20 hours billed to prepare a simple motion to dismiss. He was not satisfied with the motion to dismiss because he had sent Staes a broad outline of the problems with the League's complaint and the motion to dismiss "missed all of the points in the outline." When asked about conferences plaintiff had with Suzanne Saxman, an attorney for the League, Orlich testified that had he known about them beforehand, he would not have let plaintiff go to the conferences because "[t]here was nothing to talk about."

¶ 18    Orlich testified he voiced his objection to Staes regarding a December 2007 bill. He disputed $10,600 and was only willing to pay $13,900 of the bill. He should not be responsible for conferences between Staes and Scallan. He did not believe he should have to pay plaintiff for conferences with Saxman because Saxman "had *** no involvement with our case." Had he known about the conferences, he would have advised plaintiff not to talk to her. He should not be billed for discovery because discovery was premature. Staes had told him that he would not charge for the appeal of the remand order because it was plaintiff's mistake. Orlich had sent them a list of counterclaims, but he was billed for their review of them. He believed that due to the actions of the League, he lost several million dollars. A counterclaim was never filed.

¶ 19    Orlich described the premediation meeting at plaintiff's office as half an hour long. Plaintiff did not present any briefs or documents to the mediator. Orlich testified that by the time of the mediation, Staes had already withdrawn from the case but "only agreed to go there because this request for mediation was directed to him." His lawyer then corrected him and stated that although a motion to withdraw had been filed, it had not been ruled upon. Orlich told Staes that both Staes and Scallan were not needed at the mediation, but that they both went anyway. Orlich admitted that he agreed to pay Staes for the mediation time. He was not sure why Scallan also came; he thought "he had nothing else to do." He would not pay for Scallan's time at the mediation because he did not hire two lawyers. Because other owners from the League did not show up at the mediation conference, he authorized Staes

to prepare a motion for sanctions. He did not think that he should be responsible for work performed after May 14, 2008, because plaintiff had already withdrawn. He did admit that he should be responsible for charges after May 14, 2008, that relate to the motion for sanctions he authorized.

¶ 20 When asked whether plaintiff's efforts contributed to the settlement of the case, Orlich answered that "in an indirect way" because the defective removal filing made by plaintiff wasted time until the League was ready to settle. He settled with the League in April of 2009. He negotiated directly with the League attorney. He and the League attorney prepared a settlement agreement. The League attorney forwarded a copy to Orlich and he made a few changes. Staes did not participate in any way in drafting the settlement agreement. When asked what he believed he owed plaintiff, Orlich answered:

> "I believe I owed them $13,000 from their bill, minus the hours that were in the bill for the defective removal, plus the time to walk over at the failed settlement conference where the other parties didn't arrive, plus the time on sanctions that I had asked him to file because of this failed settlement conference."

¶ 21 Orlich admitted that he had not paid any money to plaintiff besides the initial $10,000 retainer. When asked about the research plaintiff did concerning the proper forum, Orlich answered that "maybe" plaintiff did research, but doubted that the case would ever be removed to Florida. He "explained the law" to plaintiff, but plaintiff "decided *** to check into it and reinforce my opinion." He signed the retention agreement. Orlich was under the impression that he was only hiring Staes, despite signing the retention agreement that referred to the entire firm. Staes explained to him that Scallan would only represent him in an emergency. He did not authorize Staes to speak with the mediator or attempt any settlement.

¶ 22 Orlich was disappointed in the failure of the removal proceedings, and Staes's skill level. He accepted some of the charges attributed to Staes. He was disappointed that plaintiff charged him for 20 hours of fees just for Staes and Scallan to meet with each other. He never talked to Scallan. He started negotiations with Leach, the League attorney, in spring 2009. He had agreed to sell the team and get out of the business. Leach prepared the settlement agreement, and he made handwritten changes to it and sent them directly back to Leach.

¶ 23 On October 7, 2010, the circuit court entered judgment in favor of plaintiff and against Orlich "on the issue of liability only." The court found that there was a written fee agreement knowingly and voluntarily entered into between the parties which stated that both Scallan and Staes would be compensated at $400 an hour; and that associates and support staff would each be paid at a lower rate respectively. The court commented that there may have been duplication of effort between Staes and Scallan in their interoffice conferences. The court did not find them "*per se*, unnecessary." The court did not accept Orlich's argument that plaintiff's representation ended when plaintiff filed for leave to withdraw based on the communications between the parties. The court found further that Orlich clearly accepted many of the charges from both Staes and Scallan. The court described Orlich as a "sophisticated businessman."

¶ 24 The court asked the parties to provide written submissions on damages. The court

stressed that it "may have missed an entry or so or more than one entry." The court asked Orlich to clarify, in detail, what objections he had to the fees claimed by plaintiff and asked plaintiff to respond to those objections. The court noted that it thought "the way to calculate the final judgment is *** [to] debit the $56,000 approximate bill by the amount of the settlement paid by Mr. Gidney to get a final amount of fees due and owing to the plaintiff, which should be somewhere around $28,000, I believe." The circuit court entered an order in favor of plaintiff and against Orlich "on the issue of liability only," and took the issue of damages under advisement.

¶ 25    Orlich, in his written submission, agreed that plaintiff was entitled to $3,897.35 in costs as identified in plaintiff's invoices. However, he listed six specific objections to various line items in four invoices. Those objections were: "[i]nter-office conferences which were unnecessary given the experience of the attorneys"; "[u]nnecessary research and discovery"; "[w]ork improperly done"; "[u]necessary research regarding removal after the notice of removal was filed"; "[u]nauthorized work"; and "[w]ork which took too much time given the skill of the attorneys involved and the billable rate being charged." Out of those four invoices, Orlich objected to $16,335 of fees but agreed to $17,027.50.

¶ 26    Orlich included additional invoices which listed the work that he believed was authorized. For those invoices, Orlich stated that plaintiff was authorized to charge him $8,512.50. Overall, Orlich stated that plaintiff was only entitled to $3,897.35 in costs and $25,540.00 in fees for a total of $29,437.35. He alleged that plaintiff had "already received $38,000 from Gidney and Orlich." Accordingly, he alleged that plaintiff had been overpaid in the amount of $8,562.65, which he thought "should be properly remitted to Gidney and Orlich."

¶ 27    In response to Orlich's contention that interoffice conferences were not necessary, plaintiff argued that the roughly seven hours of interoffice conferences were necessary and modest when considering that more than $4 million was being sought in the underlying lawsuit. In response to Orlich's objections to legal research and discovery, plaintiff argued that due to Orlich's desire to have jurisdiction contested in federal court, legal research was required to determine "whether sports teams that derive revenues from competing in given states render themselves amenable to personal jurisdiction in those states." Plaintiff also asserted that research was necessary to determine whether the $2 million in liquidated damages being sought against Orlich and Gidney individually was enforceable. Plaintiff described this issue as "the heart" of the League's case and that "[n]o responsible lawyer would have neglected such critical research." According to plaintiff, the 45 minutes of research on the judge that the case was originally assigned to was necessary "for purposes of the threshold issues of whether to seek removal or, if not, a substitution of judge." Plaintiff also reasoned that research for its motion to dismiss was needed and incorporated into the motion. As for preparing discovery requests, although they were eventually not used, plaintiff argued it was being "proactive." In response to Orlich's objection that work was improperly done, plaintiff argued that Orlich did not explain how the work was improperly done. In response to Orlich's objection that "[u]necessary research regarding removal after the notice of removal was filed," plaintiff pointed out that the objection was "not tied to any billing entry." Plaintiff disagreed with Orlich's contention that the two conferences with Saxman,

an attorney for the League, were unnecessary. Plaintiff explained that the initial conference was "for strategic purposes" and to get "an overall feeling from the [League's] counsel about its case and how it might either be resolved or otherwise expeditiously and effectively litigated." The second conference with Saxman only lasted 15 minutes. Plaintiff points out that Orlich did not explain how a conference between himself and plaintiff "took too much time." As far as Orlich's objection to the amount of time plaintiff billed to draft a motion to dismiss, plaintiff argued it was not excessive to spend 13 hours drafting a "substantial motion to dismiss a federal complaint on multiple theories." In response to Orlich's contention that he is only responsible for the payment of fees that he specifically authorized in the July 15, 2008; October 10, 2008; and November 4, 2008, invoices, plaintiff argued that it had already been established at trial that it was authorized to act on Orlich's behalf and that Orlich's claims of unauthorized work being performed had already been refuted by the evidence at trial.

¶ 28    Plaintiff asked for a total amount of $28,751.09. Plaintiff explained that the amount represented the total unpaid legal fees and costs claimed of $51,124.40, plus prejudgment interest in the amount of $5,272.69. Plaintiff noted that the original total amount of legal fees and costs was $61,124.40, but that Orlich had already paid the initial $10,000 retainer, so only $51,124.50 was outstanding. Plaintiff then subtracted the $28,000 it was paid by Gidney from the earlier settlement. Plaintiff also asked for $354 of additional interest for the three-month period of August 30, 2010, through November 30, 2010. Not included in plaintiff's final calculation of $28,751.09, was the $5,000 discount that the parties had agreed to earlier. Plaintiff argued that although a discount had been agreed to at the time, the discount was contingent on Orlich actually paying the remaining amount. Because Orlich failed to do so, plaintiff did not include the $5,000 discount in its calculations.

¶ 29    On July 27, 2011, the circuit court entered a judgment order as to the fees owed. The court found that the parties had agreed to a $5,000 discount, which left due and owing $19,500 in fees and $3,897.35, in costs. The court found Orlich had agreed that he owed $3,897.35 in costs. The court further found that "subsequent billings of [p]laintiff (reflected in the October 10, 2008 invoice) of which [Orlich] does not object is approximately $2,965 leaving approximately $5,725 in disputed fees after the August, 2010 agreement by" Orlich. The court found Orlich's objections to these fees "unavailing." The court ordered judgment be entered against Orlich in the amount of $23,397.35, which consisted of $19,500 of reasonable attorney fees due and owing and $3,897.35 in costs "plus pre-judgment interest of 5% from October 7, 2010 through July 27, 2011."

¶ 30    On August 25, 2011, Orlich filed a motion to reconsider and to reduce the judgment amount arguing that "the judgment overstates those amounts due" to plaintiff. In his motion to reconsider, Orlich stated that "[a]t the conclusion of the trial, the Court issued an oral ruling finding that Orlich was jointly and severally liable for that portion of the attorneys fees the Court found *** reasonable, and reserved ruling on the amount of the judgment." In his motion, Orlich argued that the circuit court found the total fees and costs owed were $41,931.65 and that the parties had agreed to a $5,000 discount. According to Orlich's calculations, because Orlich and Gidney were jointly and severally liable, and Gidney had already paid $28,000, Orlich should not be liable for more than $6,690. On September 12,

2011, the circuit court denied Orlich's motion to reconsider. On October 11, 2011, Orlich timely filed his notice of appeal.

¶ 31                                    ANALYSIS

¶ 32    Before this court, Orlich argues the circuit court's July 27, 2011, judgment order against him for damages in the amount of $23,397.35, plus prejudgment interest of 5% from October 7, 2010, thru July 27, 2011, is contrary to the manifest weight of the evidence. Orlich does not contest the circuit court's October 7, 2010, order finding him liable. According to Orlich, in his brief before this court, the circuit court never made a finding that Orlich and Gidney were jointly and severally liable. According to Orlich's calculations, he owes plaintiff no more than $4,897.35 in fees and costs. He asks this court to reverse the judgment of the circuit court and to direct the circuit court to enter judgment against him for an amount less than $4,897.35. Alternatively, he asks this court to reverse the judgment of the circuit court and to remand the matter for further proceedings.

¶ 33    Plaintiff argues that the circuit court's July 27, 2011, judgment order is not against the manifest weight of the evidence. It points out that Orlich failed to object before this court as to what specific charges he disagrees. Plaintiff also disagrees with Orlich's contention that the circuit court never found defendants jointly and severally liable. In the alternative, plaintiff argues this court can affirm the judgment of the circuit court based solely on the reasonableness of the fees charged in light of the favorable result of the underlying lawsuit.

¶ 34    Orlich did not file a reply brief in this matter.

¶ 35    A cause of action for breach of contract based on unpaid attorney fees "presents a question to be resolved by the trier of fact, following a fair and impartial trial." *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 597 (2000). The trial judge, when sitting as the trier of fact in a bench trial, makes findings of fact and weighs all of the evidence in reaching a conclusion. *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 483-84 (2002). "When a party challenges a trial court's bench-trial ruling, we defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence." *Id.* at 484. Under this standard of review, we give great deference to the circuit court's credibility determinations and we will not substitute our judgment for that of the circuit court "because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007). Further, "[a] factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Id.* at 544. We will not disturb the findings and judgment of the trier of fact "if there is any evidence in the record to support such findings." *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959); *Nokomis Quarry Co.*, 333 Ill. App. 3d at 484.

¶ 36    In his brief, Orlich argues that the circuit court never made a finding that Orlich and Gidney were jointly and severally liable. However, he never raised this issue before the circuit court. Rather, he argued the opposite in his motion for reconsideration, stating "[a]t the conclusion of trial, the [circuit court] issued an oral ruling finding that Orlich was jointly and severally liable for that portion of the attorneys fees the [circuit court] found were

-9-

reasonable, and reserved ruling on the amount of the judgment." We hold Orlich has forfeited this argument for not raising it before the circuit court. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal.").

¶ 37    We hold that the circuit court's judgment order entered July 27, 2011, pertaining to damages is not contrary to the manifest weight of the evidence. Our review of the record, and specifically, our review of the written submissions filed by the parties at the direction of the court after the October 7, 2010, order finding in plaintiff's favor on the issue of liability, shows that there is evidence in the record to support the judgment amount. *Zimmerman*, 18 Ill. 2d at 102 (we will not disturb the findings and judgment of the trier of fact "if there is any evidence in the record to support such findings"). Orlich, in his submission, listed six specific objections to the various line items in four of plaintiff's invoices. For plaintiff's other three invoices, he merely listed the work that he authorized. Plaintiff responded in kind supporting why its invoices were proper. The circuit court found Orlich's objections "unavailing." The circuit court found plaintiff's calculations as to damages more credible than Orlich's. It is not the role of this court to substitute our judgment for that of the circuit court on credibility determinations. *Nokomis Quarry Co.*, 333 Ill. App. 3d at 484-85. As such, we accept the circuit court's credibility assessments.

¶ 38    We also agree with plaintiff that Orlich has listed six specific fee objections, but fails to state why those charges are unreasonable. Plaintiff, however, explained how each of its charges was reasonable. Due to this lack of specificity, it is understandable why the circuit court found Orlich's objections "unavailing." Therefore, Orlich has not shown that the circuit court's determination regarding its objections to plaintiff's invoices was against the manifest weight of the evidence.

¶ 39    Additionally, Orlich's objections to plaintiff's invoices contained flawed calculations. In his submission on damages, Orlich claimed that plaintiff owed him approximately $8,000. He based his calculation on his belief that plaintiff was owed approximately $29,000 and that he and Gidney had already paid $38,000. Orlich's calculations are flawed because he included both Gidney's settlement of $28,000 and his initial retainer of $10,000 as credits to the amount owed. However, the court clearly stated that Gidney's settlement will be subtracted from the "$56,000 approximate bill." Further, plaintiff never disputed that Orlich had paid the initial $10,000 retainer. The amounts plaintiff sought were for legal services that occurred after the initial $10,000 retainer was applied to prior services. Plaintiff's calculations in their submission followed the directive of the court in its determination of damages. Plaintiff requested, based on its invoices, a judgment of approximately $28,000. In its calculations, plaintiff subtracted $28,000, which represented Gidney's prior settlement, from the outstanding bill of approximately $56,000. The circuit court agreed with plaintiff's calculations, with the exception that it found that the parties had agreed to a $5,000 discount which the court applied. Based on the foregoing and our review of the record, we cannot say that the circuit court's findings as to damages was "arbitrary, unreasonable, or not based in evidence." *Samour, Inc.*, 224 Ill. 2d at 544. Accordingly, the circuit court's judgment entered July 27, 2011, is not contrary to the manifest weight of the evidence.

¶ 40                              CONCLUSION

¶ 41        The judgment of the circuit court is affirmed.

¶ 42        Affirmed.