2025 IL App (1st) 231405
No. 1-23-1405

SIXTH DIVISION
September 30, 2025

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| REPUBLIC ONTARIO LLC, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2021 L 008656 |
| | ) | |
| LAWRENCE ORGAN and SUSAN ORGAN, | ) | |
| | ) | |
| Defendants and Counterplaintiffs-Appellees. | ) | The Honorable Jerry A. Esrig, Judge, Presiding. |
| | ) | |
| | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff-appellant Republic Ontario LLC (landlord) leased a penthouse apartment in Chicago to Lawrence and Susan Organ (tenants). Landlord commenced this action after tenants vacated and stopped paying rent with several months remaining on the lease. Tenants filed a counterclaim alleging that landlord violated section 5-12-080 of Chicago's Residential Landlord and Tenant Ordinance (Ordinance) (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)) regarding the security deposit and that landlord violated section 5-12-140 of the Ordinance

(Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991)) by seeking attorney's fees in this action. Upon tenants' motion for summary judgment on their counterclaim, the trial court awarded tenants $112,500, consisting of $75,000 (twice the security deposit) for landlord's violation of section 5-12-080 and $37,500 (two months' rent) for landlord's violation of section 5-12-140. The court subsequently held a bench trial and found tenants liable for unpaid rent from when landlord relisted the apartment in February 2022 to the end of the original lease term (June 30, 2022). However, the court did not award landlord rent for prior months of the lease term, during which it found that the apartment was "unrentable" due to roof leaks. The court entered a corresponding judgment in landlord's favor in the amount of $54,910.71, to be set off against the prior $112,500 judgment in tenants' favor on their counterclaim.

¶ 2        Landlord now appeals both the April 2023 order granting tenants partial summary judgment on their counterclaim, as well as the July 2023 posttrial order. For the following reasons, we affirm the challenged orders.

¶ 3                                        I. BACKGROUND

¶ 4        In May 2020, tenants entered into a lease with landlord to rent an apartment located at 400 W. Ontario Street in Chicago, which the parties describe as a "luxury" penthouse apartment.

¶ 5        The lease specified a term beginning on July 1, 2020, and ending on June 30, 2022, with monthly rent of $18,750. The lease also called for a payment of a security deposit of $37,500, equal to two months' rent. The lease indicated that the security deposit would be held at "Wells faro bank [*sic*] Wells Fargo Beverly Hills." There is no dispute that landlord did not provide a security deposit receipt to tenants.

¶ 6    The lease included the following provision: "Legal Expenses. Tenant shall be liable for all legal fees and costs incurred by Landlord as a result of Landlord's effort to enforce any provision of this Lease, to the extent permitted by court rules, statute, or local ordinance."

¶ 7    A. Tenants Enter into Agreement for a Third Party to Occupy the Premises

¶ 8    The record reflects that, in December 2020, tenants and a third party, Thomas Merkel, executed a "side letter" agreement for Merkel to rent the premises from December 5, 2020, to "July 15, 2020" [*sic*]. The letter reflects that tenants would not reside there while Merkel did. The letter recited that Merkel would be "added to" the lease between tenants and landlord, although the record does not indicate whether landlord ever formally agreed to add Merkel to the lease. The record reflects that Merkel resided at the premises for a number of months.

¶ 9    B. Tenants and Merkel Vacate the Premises as of May 31, 2021

¶ 10    According to tenants, a number of issues arose in the premises. Tenants' discovery responses indicated that these issues included an air conditioner "running on top of master bedroom" that "would cause the ceiling and chandelier to shake." In addition, "the door would leak," causing rainwater to accumulate onto the floor. There were also a number of plumbing issues.

¶ 11    On March 31, 2021, tenants (through an attorney) sent an e-mail to landlord's agent, stating that "Effective May 31, 2021[,] they wish to terminate the lease." Tenants informed landlord that Merkel would be moving out in early May 2021 and that Merkel indicated he was unable to sleep "because the HVAC for the building is on top of the master bedroom, and it causes the master bedroom and master closet to vibrate and make noise."

¶ 12    It is undisputed that tenants and Merkel vacated the apartment by May 31, 2021. In subsequent e-mails in June 2021, landlord indicated its position that tenants had "abandoned" the lease and remained obligated to make monthly rent payments under the lease.

¶ 13    On June 21, 2021, tenants informed landlord that they had been advised by counsel "to pay rent and late fees, if any, up to May 31, 2021" and asked landlord to specify the sum due. In response, landlord indicated that as of May 31, 2021, tenants owed $19,982.93 in past rent. Landlord additionally requested $18,750.00 for the month of June 2021.

¶ 14    It is undisputed that tenants paid $19,982.93 shortly thereafter. However, tenants did not pay rent for June 2021 or subsequent months.

¶ 15    C. Landlord Commences This Action for Unpaid Rent

¶ 16    In August 2021, landlord filed a complaint against tenants, alleging breach of the lease for unpaid rent and seeking damages of $56,250. Landlord alleged that tenants vacated the premises without notice "on or around the first week of June 2021." Landlord pleaded that it was taking all commercially reasonable steps to mitigate damages, including relisting the premises for rent.

¶ 17    The record reflects that landlord made various repairs to the premises in the latter half of 2021 and early 2022. On February 2, 2022, landlord listed the unit for rent for $20,000 per month.

¶ 18    In March 2022, the trial court entered an order requiring tenants to file responsive pleadings by April 12, 2022. Tenants' counsel failed to appear at the next case management conference on April 20, 2022. On that date, the court entered an order indicating that tenants were in default; the court set the matter for "prove up" on May 11, 2022.

¶ 19    On April 20, 2022, tenants filed a motion to vacate the default judgment, indicating that they were prepared to answer.

¶ 20    D. Tenants File an Answer and Counterclaim Alleging Ordinance Violations

¶ 21        On May 5, 2022, tenants filed an answer to the complaint, including the affirmative defense that landlord failed to mitigate damages. Tenants pleaded that landlord "failed to list the Premises for rent for months while listing it for $20,000.00 per month," which was "in excess of the rental value."

¶ 22        Tenants also filed a "Counter Complaint" (counterclaim) containing five counts. The first four counts alleged violations of section 5-12-080 of the Ordinance, which concerns a landlord's obligations with respect to security deposits. Chicago Municipal Code § 5-12-080 (amended July 28, 2010). Count I alleged that landlord violated subsection (a) of section 5-12-080 by failing to provide the name and address of the financial institution where the deposit would be held "clearly and conspicuously on the Lease" and by "placing the security deposit in Beverly Hills, California." *Id.* § 5-12-080(a). Count II alleged that landlord failed to give tenants a receipt for the security deposit with the information required by section 5-12-080(b). *Id.* § 5-12-080(b). Count III alleged that landlord violated section 5-12-080(d) by failing to return the security deposit within 45 days after tenants vacated the premises. *Id.* § 5-12-080(d). Count IV alleged that landlord failed to pay interest on the security deposit, in violation of section 5-12-080(c). *Id.* § 5-12-080(c).

¶ 23        Separately, count V alleged that landlord violated section 5-12-140 of the Ordinance by seeking attorney fees in this action. See Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991) ("[N]o rental agreement may provide that the landlord or tenant: **** [a]grees that in the event of a lawsuit arising out of the tenancy the tenant will pay the landlord's attorney's fees except as provided for by court rules, statute, or ordinance."). Tenants pleaded that "Landlord is attempting to enforce a provision in the contract allowing for attorneys fees, which are specifically barred by the Chicago [Ordinance]." Count V thus sought "[d]amages in the amount of double one month's rent of $18,750,00, or $37,500 in accordance with the [Ordinance]." See *id.* ("If the

landlord attempts to enforce a provision in a rental agreement prohibited by this section the tenant may recover two months' rent.").

¶ 24                          E. Default Judgment Is Entered but Vacated

¶ 25        On May 11, 2022, landlord's counsel submitted documentation to the court in support of default, including an affidavit averring that tenants owed $225,000 for monthly rent, that there were $568.48 in costs, and that landlord incurred "reasonable attorney fees" of $2,312.50. Landlord also submitted an affidavit that itemized the dates and hours that its counsel worked on the matter.

¶ 26        On May 11, 2022, the court issued a default judgment in the amount requested by landlord.[1] Later on that date, tenants again filed a motion to vacate the default. The default judgment was vacated on May 16, 2022.

¶ 27        The record reflects that the parties engaged in written discovery. In response to tenants' requests to admit, landlord admitted that it "failed to list the address where the security deposit was held on the lease" and failed to deposit the security deposit "into a bank in Illinois."

¶ 28        Landlord's interrogatory responses reflected that, in the several months following May 31, 2021, it undertook major repairs of the unit, including repairs to the roof and wood flooring. Landlord indicated that it began marketing the property for rent in February 2022, and a new lease was executed on May 2, 2022. However, it is undisputed that the new tenant's lease term did not begin until July 2022, *i.e.*, after expiration of the tenants' lease at the end of June 2022.

¶ 29                          F. Partial Summary Judgment on Tenants' Counterclaim

---

[1]There are no hearing transcripts in the record. Presumably, the trial court was not aware that tenants had already filed an answer and counterclaim at the time that it entered the default judgment on May 11, 2022.

¶ 30   On February 7, 2023, tenants moved for summary judgment on certain counts of their counterclaim. With respect to count I, they urged there was no dispute that landlord violated section 5-12-080(a) by failing to disclose the name and address of the bank where the security deposit was deposited. Thus, pursuant to section 5-12-080(f), they sought damages for twice the $37,500 security deposit, *i.e.*, $75,000. See Chicago Municipal Code § 5-12-080(f)(1) (amended July 28, 2010) (if a landlord fails to comply with subsections 5-12-080(a) through (e), "the tenant shall be awarded damages in an amount equal to two times the security deposit").

¶ 31   Tenants similarly moved for summary judgment on count II, for landlord's failure to issue a security deposit receipt in compliance with section 5-12-080(b). Tenants also moved for summary judgment on count III, based on landlord's failure to pay interest on the security deposit in violation of section 5-12-080(c).

¶ 32   Separate from the alleged section 5-12-080 security deposit violations, tenants also moved for summary judgment on count V, alleging that landlord violated section 5-12-140 by attempting to recover attorney fees in this action. They urged that landlord "flagrantly violated" section 5-12-140 when it sought attorney fees in connection with the default judgment. Due to "Landlord's attempt to enforce an illegal provision" of the lease, tenants urged that landlord was "liable for two months of rent, or $37,500.00."

¶ 33   Finally, tenants' motion for summary judgment sought a finding that landlord failed to mitigate its damages after tenants left the premises on May 31, 2021. They averred that landlord made repairs at "an extremely slow pace" and "failed to take any measures to advertise the unit until February 2, 2022." Thus, tenants claimed they were not responsible for rent from June 2021 through February 2022.

¶ 34      In its response to tenants' summary judgment motion, landlord acknowledged that it violated section 5-12-080 with respect to the security deposit. However, it argued that under subsection (f), tenants' recovery for any violations of section 5-12-080 was limited to twice the $37,500 security deposit, such that damages were "capped at $75,000."

¶ 35      With respect to the alleged violation of section 5-12-140, landlord disputed that the attorney fee provision in the lease violated that section of the Ordinance. Landlord emphasized that section 5-12-140 indicates attorney fees may still be recoverable "as provided for by court rules, statute, or ordinance." See Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991).

¶ 36      Landlord's response otherwise argued that questions of fact precluded summary judgment with respect to the tenants' affirmative defense of failure to mitigate damages. Landlord submitted an affidavit from one of its managers, attesting that "significant repair work was necessary due to damage caused at the property by the tenants and a leak in the roof" before the unit could be marketed for rent to new prospective tenants.

¶ 37      The record does not indicate whether there was oral argument on the motion.

¶ 38      On April 17, 2023, the trial court entered an order that partially granted tenants' motion for summary judgment. The court granted summary judgment as to count I of the counterclaim "for violation of [section] 5-12-080 of the Chicago Residential Landlord Tenant Ordinance." For that count, the court determined that the judgment amount in favor of tenants "shall be two times the security deposit, in the amount of $75,000.00." Notably, although tenants had sought summary judgment with respect to claimed violations of subsections (a), (b), and (c) of section 5-12-080, the court's April 2023 order did not specify which particular subsection(s) of section 5-12-080 had been violated.

¶ 39 In the same order, the court granted summary judgment "as to count II [*sic*] for violation of [section] 5-12-140" of the Ordinance. For that violation, it specified "the judgment amount in favor of [tenants] and against [landlord] shall be two times the rent, in the amount of $37,500.00." Notably, although this portion of the written order referred to "count II," it appears this was a typographical error, insofar as it was count V of tenants' counterclaim that alleged landlord violated section 5-12-040 in its attempt to recover attorney fees.

¶ 40 The court otherwise denied tenants' motion "as to the affirmative defense of mitigation." Thus, the April 2023 order found landlord liable on the counterclaim for a combined sum of $112,500—that is, $75,000 (twice the security deposit) for violation of section 5-12-080 of the Ordinance and $37,500 (two months' rent) for violation of section 5-12-040.

¶ 41                                G. Bench Trial and Post-Trial Order

¶ 42 The record reflects that the court conducted a bench trial in July 2023. However, there is no transcript in the record. Nor does the record contain a bystander's report, pursuant to Illinois Supreme Court Rule 323(c), or an agreed statement of facts, pursuant to Rule 323(d). See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 43 On July 24, 2023, the trial court entered an order containing its findings of fact after considering the trial evidence. In short, it found that tenants were liable to landlord only for rent due from the period February 3, 2022, to the end of the lease term, June 30, 2022.

¶ 44 The court found that the parties' lease term commenced on July 1, 2020, and was to end on June 30, 2022. During the lease term, the "parties agreed to add Thomas Merkel as an occupant, without affecting the liability of the parties to each other" under the lease. The court found that tenants and Merkel vacated the premises as of May 31, 2021, after which tenants paid no rent through the end of the term.

¶ 45        The court found there were problems with the unit at the time tenants vacated, including "significant roof leaks causing extensive damage to interior surfaces of the premises and interfering with the occupancy of the unit." These leaks "occurred through no fault of the tenants or occupants." It also found there was "a significant problem caused by vibrations and noise from a roof top HVAC unit located directly above the master bedroom which interfered with the use of the master bedroom for sleeping."

¶ 46        According to the posttrial order, "[l]andlord admitted that during the period June 1, 2021, through February 2, 2022, while the leaks existed and before the leaks could be repaired and damage to the interior repaired, the premises were not rentable." Further, the court found that landlord "admits that it did not repair the roof leaks and complete its repair of interior surfaces damaged by the roof leaks until February 2, 2022," the date landlord listed the property for rent.

¶ 47        The court found that from February 2, 2022, "when the landlord listed the property, the landlord acted reasonably in mitigating its damages" after tenants vacated. The court found that on or about April 25, 2022, landlord entered into a new lease with a new tenant for a monthly rent of $18,000, with a term beginning July 21, 2022. Thus, although landlord found a new tenant before the end of the prior tenants' lease term on June 30, 2022, the new tenant's lease did not commence until after the prior term.

¶ 48        The court noted that although landlord claimed that it had to repair damage caused by tenants, landlord "did not introduce any evidence that repairs attributable to the tenant[s] extended the time required to repair the roof leaks." The court concluded that because of the roof leaks, "which the landlord admitted rendered the premise unrentable, and the HVAC vibrations, the landlord did not prove its entitlement to rent from the defendants under the Lease for the period

June 1, 2021 through February 2, 2022." That is, it found tenants did not owe rent for the time from when they vacated the apartment until the property was relisted for rent.

¶ 49 However, the court found tenants liable for rent under remainder of the lease term after February 2, 2022. That is, the court found that landlord proved it was entitled to rent due under the lease "for the period from February 3, 2022, through June 30, 2022."[2] After crediting tenants for the security deposit, it entered judgment in favor of landlord "in the amount of $54,910.71."

¶ 50 The court noted that this $54,910.71 amount "shall be setoff against the judgment in the amount of $112,500 previously entered in favor of [tenants]," referencing the April 17, 2023, order finding landlord liable to tenants in the amounts of $75,000 and $37,500 for violations of Ordinance sections 5-12-080 and 5-12-140. The July 24, 2023, order specified that it was a final order.

¶ 51 Landlord filed a notice of appeal, challenging both the April 17, 2023, order as well as the July 24, 2023, posttrial order.

¶ 52                                         II. ANALYSIS

¶ 53 On appeal, landlord makes two alternative arguments challenging the portion of the April 2023 order awarding $37,500 to tenants "as to count II for violation of 5-12-040." Landlord does not challenge the portion of the April 2023 order awarding tenants $75,000 for violation of section 5-12-080. Separately, landlord challenges the post-trial order, insofar as the court did not award past rent for certain months.

---

[2]It is undisputed that no other tenant was paying rent for the unit during this period, as the new tenant's lease term did not commence until July 2022.

¶ 54      With respect to the summary judgment order, landlord attacks the portion of the order that stated, "Judgment is entered against [landlord] as to count II for violation of 5-12-140" of the Ordinance and that awarded tenants "two times the rent, in the amount of $37,500."

¶ 55      Although its brief is somewhat confusing in its approach, landlord appears to assert alternative arguments, depending on whether this portion of the April 2023 order was intended to reference count II of the counterclaim (which pleaded violation of *section 5-12-080* pertaining to the security deposit) or whether it corresponded to the separate portion of the counterclaim (count V) alleging landlord's violation of *section 5-12-140* for seeking attorney fees. That is, landlord makes alternative arguments arising from the apparent typographical error in referencing "count II" instead of "count V." Essentially, landlord urges that this $37,500 award was error, whether the court intended it to correspond to violation of either section 5-12-080 or section 5-12-140.

¶ 56      With respect to the July 2023 posttrial order, landlord claims the court erred in concluding that it was not entitled to recover lost rent for the period from June 1, 2021, to February 2022, due to the roof leaks at the premises.

¶ 57      For the following reasons, we conclude that the court properly entered summary judgment in tenants' favor with respect to the violation of section 5-12-140 of the Ordinance, as the record shows landlord violated procedural rules when it sought attorney fees in connection with a default judgment. We otherwise affirm the appealed-from orders insofar as they (1) awarded tenants $75,000 for landlord's violation of section 5-12-080 and (2) awarded landlord $54,910.71 for unpaid rent.

¶ 58                          A. Summary Judgment Standard of Review

¶ 59    We will first address landlord's claims regarding the April 2023 order that granted tenants' motion for summary judgment on certain counts of their counterclaim. Under section 2-1005(c) of the Code of Civil Procedure, summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). " 'Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt.' " *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 27 (quoting *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992)).

¶ 60    We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Id.* ¶ 26. We may affirm a grant of summary judgment "on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." *Id.* ¶ 27.

¶ 61    We also note that "[t]he construction and legal effect of the lease agreement and the provisions of the [Ordinance] are questions of law" that are subject to *de novo* review. *Benford v. Everett Commons, LLC*, 2014 IL App (1st) 131231, ¶ 14.

¶ 62    B. The Portion of the April 2023 Order Awarding $37,500 Was Clearly Directed to the
Claimed Violation of Section 5-12-140 of the Ordinance

¶ 63    As noted, landlord makes two alternative arguments challenging the following portion of the April 2023 order: "Judgment is entered against [landlord] as to *Count II* for violation of 5-12-140 of the Chicago Residential Landlord Tenant Ordinance. The judgment amount in favor of [tenants] and against [landlord] shall be two times the rent, in the amount of $37,500.00." (Emphasis added).

¶ 64      Landlord's brief initially emphasizes that this portion of the order referred to "Count II," and that count II of the counterclaim alleged that landlord failed to issue a security deposit receipt in compliance with section 5-12-080(b). Thus, landlord's brief initially suggests that this portion of the April 2023 order corresponded to an award for violation of *section 5-12-080*. Under that reading, landlord proceeds to claim this portion of the April 2023 order was error because (1) damages for a violation of section 5-12-080 are twice the security deposit, not twice the rent, and (2) in a prior portion of the same order, the court had already awarded twice the security deposit for violation of 5-12-080 under Count I of the counterclaim, such that another award would be unduly duplicative.

¶ 65      These claims are without merit for a simple reason: this portion of the April 2023 order awarding $37,500 was plainly directed to landlord's claimed violation of section *5-12-140*, not section 5-12-080. We think this is abundantly clear because (1) it explicitly referred to "violation of 5-12-140" and (2) it specified that the corresponding award was "two times the rent, in the amount of $37,500." We keep in mind the presumption that the trial court knew and applied the law. See *In re N.B.*, 191 Ill. 2d 338, 345 (2000) ("The circuit court is presumed to know the law and apply it properly, absent an affirmative showing to the contrary in the record."). Here, the court expressly stated it was finding liability under section 5-12-140; moreover, the amount of the corresponding award tracks section 5-12-140's language that "[i]f the landlord attempts to enforce a provision in a rental agreement prohibited by this section the tenant may recover two months' rent." Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991). We have no reason to doubt that the court was, in fact, referring to the alleged violation of section 5-12-140 when it awarded two months' rent in this portion of the April 2023 order.

¶ 66    We recognize that this portion of the order referred to "Count II," and that count II of the tenants' counterclaim alleged a violation of section 5-12-080(b). Yet, as the substantive language above clearly referred to section 5-12-0140, we think it is obvious that the "Count II" was simply a typographical error. Indeed, landlord essentially concedes this in a footnote to its brief, stating: "The April 17, 2023 Order may have had a scrivener error on what cause of action was granted because it references Section 5-12-040 was violated in Count II rather than Count V."

¶ 67    As we find it apparent that the portion of the order awarding $37,500 was directed to the counterclaim's alleged violation of section 5-12-040, we reject landlord's contentions that it was an improper award under section 5-12-080.

¶ 68    However, this does not resolve landlord's alternative contention that this award was otherwise not warranted because landlord did not violate section 5-12-040.

¶ 69    C. Tenants Were Entitled to Recover Two Months' Rent Under Section 5-12-040
Because Landlord Improperly Sought Attorney Fees

¶ 70    This brings us to landlord's contention that the court's award of $37,500 (two months' rent) was otherwise improper because landlord did not violate section 5-12-140 of the Ordinance. Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991).

¶ 71    Section 5-12-140 states that:

"Except as otherwise specifically provided by this chapter, no rental agreement may provide that the landlord or tenant *** [a]grees that in the event of a lawsuit arising out of the tenancy the tenant will pay the landlord's attorney's fees except as provided for by court rules, statute, or ordinance." *Id.*

"If the landlord attempts to enforce a provision in a rental agreement prohibited by this section the tenant may recover two months' rent." *Id.*

¶ 72    Here, the court's award under section 5-12-140 was premised upon landlord's attempt to recover attorney's fees in connection with the default judgment. Although that default judgment was promptly vacated, it is clear that landlord made a number of procedural missteps in seeking attorney fees without giving due notice to tenants. We agree with the trial court that landlord's actions constituted a violation of section 5-12-140 that justified a corresponding award of two months' rent.

¶ 73    Significantly, landlord's complaint for breach of contract against tenants did not seek attorneys' fees. Yet, landlord subsequently sought attorney fees in connection with its motion for default. The record shows that in doing so, landlord failed to comply with governing procedural rules requiring due notice to a defaulting party that additional relief not previously requested is being sought.

¶ 74    Under section 2-604.2 of the Code of Civil Procedure, "[i]n the case of default, if a remedy is sought in the pleading *** that is beyond what the defaulted party requested, notice shall be given to the defaulted party as provided by Illinois Supreme Court Rule 105." 735 ILCS 5/2-604.2 (West 2022). In turn, Supreme Court Rule 105 provides:

> "If new or additional relief *** is sought against a party ***, notice shall be given him as herein provided. The notice shall be captioned with the case name and number and shall be directed to the party. It shall state that a pleading seeking new or additional relief against him has been filed and that a judgment by default may be taken against him for the new or additional relief unless he files an answer or otherwise files an appearance in the office of the clerk of the court within 30 days after service ***." Ill. S. Ct. R. 105(a) (eff. Jan. 1, 2018).

¶ 75          Landlord sought attorney fees in connection with default, notwithstanding its failure to plead in its complaint that it was seeking such fees. Further, landlord did not give tenants the requisite notice under section 2-604.2 of the Code of Civil Procedure (735 ILCS 5/2-604.2 (West 2022)) and Rule 105 that it was seeking attorney fees in connection with a default judgment.

¶ 76          In short, landlord never pled attorney fees, never amended its complaint, and never invoked the Ordinance in support of a request for such fees. Its request for attorney fees in connection with a default judgment was unsupported by authority. In our view, landlord's improper effort to collect attorney fees amounted to an attempt to enforce a "prohibited" provision within the meaning of section 5-12-140. Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991).

¶ 77          In affirming, we are unconvinced by landlord's argument that the section 5-12-140 award should be reversed because its lease provision regarding attorney fees "did not violate the Ordinance because it stated that the fees would only be shifted as allowed by law similar to [the] language of Section 5-12-140." This argument misconstrues the basis for the award under the facts of this case.

¶ 78          To be clear, we are not deciding that the lease provision, on its face, was impermissible under the Ordinance. The relevant provision in the tenants' lease stated: **"Legal Expenses. Tenant shall be liable for all legal fees and costs incurred by Landlord as a result of Landlord's effort to enforce any provision of this Lease,** *to the extent permitted by court rules, statute, or local ordinance*." (Emphasis added).

¶ 79          We recognize that our court has found that lease provisions with such limiting language do not violate the Ordinance. See, *e.g.*, *VG Marina Management Corp. v. Wiener*, 378 Ill. App. 3d 887, 892 (2008) (lease clause allowing for attorney fees only " 'as provided by applicable laws and court rules' " did not violate the Ordinance); *Plambeck v. Greystone Management & Columbia*

*National Trust Co.*, 281 Ill. App. 3d 260, 267 (1996) (clause contemplating fees " 'to the extent permissible by Court rules, Court order, state statute or Local Ordinance' " was not prohibited (emphasis omitted)). We do not purport to undermine those decisions. Rather, we find *the manner* in which landlord sought attorney fees gave rise to liability under section 5-12-140, even if the lease language was not prohibited.

¶ 80    Section 5-12-140 identifies certain prohibited provisions and penalizes a landlord's attempts to enforce them. But it does not condition liability on the existence of such language appearing in a lease; if that were so, an oral lease could not give rise to liability if landlord sought to enforce a prohibited term.

¶ 81    Here, the trial court's decision did not rest on a finding that the lease's attorney fees clause was prohibited. Rather, it was based on landlord's improper attempt to seek its fees as part of a default judgment, outside the rules of pleading and beyond the scope of the Ordinance.

¶ 82    For the same reasons, we are unpersuaded by landlord's argument that it was permitted under the Ordinance to seek attorney fees in this breach of contract action for back rent because "[a]ttorney fees are recoverable under [sections] 5-12-180 and 5-12-130." Regardless of whether attorney fees are *potentially* recoverable under these provisions of the Ordinance, it is undisputed that, in this case, landlord failed to comply with separate procedural rules when it sought attorney fees in conjunction with a default judgment. This amounted to an attempt to enforce a prohibited provision, justifying an award of two months' rent under section 5-12-140.

¶ 83    On this basis, we affirm the challenged portion of the April 2023 order awarding tenants $37,500—the sum of two months' rent—for violation of section 5-12-140. Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991) ("If the landlord attempts to enforce a provision in a rental agreement prohibited by this section the tenant may recover two months' rent.").

¶ 84       For purposes of clarity, we point out that there is no outstanding award of attorney fees in this case. Although the trial court entered an award of attorney fees in the May 2022 default judgment against tenants, that judgment was promptly vacated. At no other point did the trial court award attorney fees.

¶ 85       We again note that landlord does not challenge the prior portion of the April 2023 order that awarded tenants $75,000 (twice the security deposit) for violation of section 5-12-080.

¶ 86               D. The Record is Insufficient to Reverse the Posttrial Findings

¶ 87       We turn to landlord's arguments with respect to the court's July 2023 posttrial order, which found tenants liable for rent only for the period February 3, 2022 to June 30, 2022, *i.e.* from the time the unit was relisted for rent until the end of tenants' lease term.[3] Landlord claims the court erred when it concluded that tenants owed no rent for the prior period from June 1, 2021, through February 2, 2022, due to roof leaks that made the unit "unrentable."

¶ 88       Landlord claims that the trial court erred insofar as its order cited section 5-12-110 of the Ordinance regarding a landlord's obligation to maintain the roof. See Chicago Municipal Code § 5-12-110 (amended Sept. 6, 2017) (listing various circumstances in which tenants may seek remedies under the Ordinance, including a landlord's "[f]ailure to maintain the *** exterior roof in sound condition and repair, substantially watertight"). Landlord does not deny that it was obligated to maintain the roof. Yet, it argues that the court erred in relying on section 5-12-110 because that provision "requires written notice of the defect be provided to the landlord and fourteen (14) days to cure" before the lease is terminated. See *id.* § 5-112-110(a) (if the landlord's

---

[3]There is no trial evidence in the record before us to indicate that tenants had any reason to know that, as of February 3, 2022, the premises were repaired and rentable. Nor is there any indication that landlord communicated to tenants that they could sublet the premises after that point in time in order to mitigate damages from tenants' breach of the lease. The parties' briefs do not mention this issue.

material noncompliance with the ordinance "renders the premises not reasonably fit and habitable, the tenant *** may deliver a written notice to the landlord specifying the acts and/or omissions constituting the material noncompliance and specifying that the rental agreement will terminate on a date not less than 14 days after receipt of the notice" unless the landlord remedies the condition).

¶ 89        According to landlord, tenants "never provided such notice or an opportunity" for landlord to correct the roof leaks but "merely provided notice of their abandonment." Thus, it claims that tenants' obligation to pay rent "was not terminated" by the roof leaks and that they remained obligated to pay rent for the next several months.

¶ 90        Landlord also argues that it took reasonable steps to mitigate damages from tenants' breach of the lease. Landlord asserts that the unit "required numerous aesthetic items [to] be addressed in order for it to be marketable for such a high rental rate" and "it is not unfathomable that it took seven (7) months to make the necessary repairs to have it listed for rent." Without citing any portion of the record, landlord's brief asserts "the evidence showed that [landlord] made efforts to repair the Premises before listing it for rent" in February 2022.

¶ 91        "When a party challenges a trial court's bench-trial ruling, we defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence." (Internal quotation marks omitted.) *Staes and Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35. A factual finding is "against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." (Internal quotation marks omitted.) *Id.*

¶ 92        We must reject landlord's challenges to the trial court's posttrial findings for the simple reason that we lack an adequate record of the evidence or arguments presented at trial. Although landlord claims that "the facts are not in dispute for purpose of this appeal," its challenges to the

posttrial order clearly take issue with the court's factual findings. Indeed, landlord's position that the roof leaks did not relieve tenants' obligation to pay rent is contrary to the court's posttrial finding that "Landlord admitted that during the period June 1, 2021, through February 2, 2022, while the leaks existed *** the premises were not rentable." That finding was the basis for the court's conclusion that landlord was not entitled to recover rent for that period.

¶ 93 Given landlord's failure to provide any record of the proceedings at trial, we are in no position to find any error in the court's posttrial findings. "It is the appellant's duty to present the court with a proper record on appeal, so that the court has an adequate basis for reviewing the decision below." *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). "When there is a gap in the record that could have a material impact on the outcome of the case, the reviewing court will presume that the missing evidence supported the judgment of the trial court and resolve any doubts against the appellant." *Id.*

¶ 94 "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding. Instead, absent a record, 'it [is] presumed that the order entered by the trial court [is] in conformity with the law and had a sufficient factual basis.' " *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (quoting *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)).

¶ 95 In this case, there is no transcript of the bench trial. Nor did landlord submit a bystander's report, pursuant to Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). See *Midwest Builder Distributing, Inc.*, 383 Ill. App. 3d at 655 ("[I]f there is no direct transcript of the trial proceedings, the appellant may prepare a bystander's report summarizing the events that occurred, but such report may not be included in the record unless it is certified by the court or unless the parties

stipulate to it."). Further, this court has not been provided with any agreed statement of facts, pursuant to Rule 323(d). Ill. S. Ct. R. 323(d) (eff. July 1, 2017).

¶ 96    Given the lack of any record of the trial proceeding, we have no basis to evaluate any of landlord's contentions as to whether the trial evidence showed that the roof leaks rendered the premises unrentable, whether tenants gave adequate notice of such leaks to landlord, or whether landlord acted diligently and reasonably in repairing the premises. Rather, we must presume that the trial evidence supported the trial court's conclusion that the premises "were not rentable" from June 1, 2021, through February 2, 2022, such that tenants had no obligation to pay rent during that period.

¶ 97    In short, the lack of an adequate record precludes us from disturbing the trial court's findings in its July 2023 posttrial order. That is, we leave intact the trial court's posttrial order in landlord's favor in the amount of $54,910.71.

¶ 98                                  III. CONCLUSION

¶ 99    In summary, we affirm the April 2023 order awarding tenants $37,500, based on landlord's violation of section 5-12-140 of the Ordinance (Chicago Municipal Code § 5-12-140 (amended Nov. 6, 1991)), plus another $75,000 based on landlord's violation of section 5-12-080 of the Ordinance (Chicago Municipal Code § 5-12-080 (amended July 28, 2010)). We also affirm the July 2023 posttrial order awarding landlord $54,910.71 on its complaint against tenants for unpaid rent.

¶ 100    Affirmed.

*Republic Ontario LLC v. Organ*, **2025 IL App (1st) 231405**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-L-008656; the Hon. Jerry A. Esrig, Judge, presiding. |
| **Attorneys for Appellant:** | Alexander I. Passo and Joanna Kopczyk, of Latimer LeVay Fyock LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Carol Oshana, of Oshana Law, of Chicago, for appellees. |